# GEORGIA RAILROAD AND BANKING COMPANY
## v. SMITH.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 28.   Argued October 16, 17, 1888.—Decided October 29, 1888.

The incorporation of a railroad company by a State, the granting to it of special privileges to carry out the object of its incorporation, particularly the authority to exercise the State's right of eminent domain to appropriate private property to its uses, and the obligation, assumed by the acceptance of the charter, to transport all persons and merchandise upon like conditions and for reasonable rates, affect the property and employment with a public use, and thus subject the business of the company to a legislative control which may extend to the prevention of extortion by unreasonable charges, and favoritism by discriminations.

In order to exempt a railroad corporation from legislative interference with its rates of charges within a designated limit, it must appear that the exemption was made in its charter by clear and unmistakable language, inconsistent with any reservation of power by the State to that effect.

Although the general purpose of a proviso in a statute is to qualify the operation of the statute, or of some part of it, it is often used in other senses, and is so used in the act of the legislature of Georgia of December 21, 1833, incorporating the Georgia Railroad Company; and that act does not exempt the corporation created by it, or its successors, from the duty of submitting to reasonable requirements concerning transportation rates made by a railroad commission created by the State.

By an act of the legislature of Georgia, passed December 21, 1833, the plaintiff in error was incorporated under the name of the Georgia Railroad Company, and empowered to construct a "rail or turnpike road from the city of Augusta," with branches extending to certain towns in the State, and to be carried beyond those places at the discretion of the company.  Laws of Georgia, 1833, 256.

By an act of the legislature, passed December 18, 1835, certain amendments to the charter were made, and among others one changing its corporate name to "The Georgia Railroad and Banking Company," its present designation.

The twelfth section of the charter, among other things, declared that "The said Georgia Railroad Company shall, at all

times, have the exclusive right of transportation or conveyance of persons, merchandise, and produce, over the railroad and railroads to be by them constructed, while they see fit to exercise the exclusive right: *Provided*, That the charge of transportation or conveyance shall not exceed fifty cents per hundred pounds, on heavy articles, and ten cents per cubic foot, on articles of measurement, for every one hundred miles; and five cents per mile for every passenger: *Provided, always*, That the said company may, when they see fit, rent or farm out all or any part of their exclusive right of transportation or conveyance of persons, on the railroad or railroads, with the privilege to any individual or individuals, or other company, and for such term as may be agreed upon, subject to the rates above mentioned. And the said company, in the exercise of their right of carriage or transportation of persons or property, or the persons so taking from the company the right of transportation or conveyance, shall, so far as they act on the same, be regarded as common carriers." In pursuance of the authority conferred by this section the company, by a deed bearing date on the 7th of May, 1881, leased to one William M. Wadley, for the term of ninety-nine years, "all its privileges, general and exclusive," of transporting persons and property over the lines of railroad owned and controlled by it, to the full extent that it then enjoyed, or was entitled to enjoy, or might thereafter acquire, subject to the obligations and duties imposed by its charter. With these privileges the company also leased to Wadley, for the same term, all its railroads and their branches, "together with its rights of way, road-beds, depots, stations, warehouses, elevators, workshops, wells, cisterns, water tanks, and other appurtenances." The lessee on his part covenanted to pay the company, as a consideration for the lease, the sum of $600,000 annually, for the full term of ninety-nine years, in two semiannual payments; also to pay the taxes on the property and franchises; to return the property on the termination of the lease in as good condition as it was at its date; to keep the railroad and its appurtenances and the means of transportation in first-class condition, and to indemnify the company against any damages,

losses, or liabilities in the operation of the roads. This lessee has since died, and in the present case his interests were maintained in the court below by his executor. ·

On the 14th of October, 1879, the legislature of Georgia passed an act entitled " An act to provide for the regulation of railroad freight and passenger tariffs in this State ; to prevent unjust discrimination and extortion in the rates charged for transportation of passengers and freights, and to prohibit railroad companies, corporations, and lessees in this State from charging other than just and reasonable rates, and to punish the same, and prescribe a mode of procedure and rules of evidence in relation thereto ; and to appoint commissioners, and to prescribe their powers and duties in relation to the same." Laws of Georgia, 1879, 125.

In pursuance of this act a board was constituted, designated the Railroad Commission, composed of three members, originally consisting of James M. Smith, Campbell Wallace, and Samuel Barnett ; but to the place of Samuel Barnett the defendant, Leander N. Trammell, has succeeded. This commission has prescribed rates for the transportation of freight and persons by railroad companies, in the State, which are less than the maximum of rates authorized by the 12th section of the charter of the company. The act imposes a penalty of not less than one or more than five thousand dollars for every violation of the rules and regulations thus prescribed. The company and the executor of the lessee accordingly filed their bill, in the case before us, in the Superior Court of Fulton County, Georgia, against the Railroad Commissioners and the Attorney General of the State, contending, among other things, that the charter of the company is a contract between it and the State of Georgia, and that by it the company has the right to charge any rates for freight and passengers not exceeding those limited in the 12th section of its charter, and that the act of October 14, 1879, is in conflict with the clause of the Constitution of the United States which prohibits a State from passing any act impairing the obligation of a contract. They pray in their bill that the act may be declared null and void, and inoperative against them, and that the commission may

be enjoined from prescribing rates of fare and freight over the railroad of the company and its branches, or in any manner enforcing the provisions of the act against them. To this bill the defendants demurred, on the ground that it disclosed no case entitling the complainants to relief in equity, and that they had an adequate and complete remedy at law. The court sustained the demurrer and dismissed the bill. On being taken to the Supreme Court of the State the decree was affirmed; and to review it the case is brought to this court by the railroad company.

*Mr. Edward Baxter* for plaintiff in error. *Mr. Joseph B. Cumming* filed a brief for the same.

*Mr. Clifford Anderson* for defendants in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

As appears from the statement of the case, the contention in the court below of the company, the plaintiff in error here, so far as it embraced any Federal question, was that the 12th section of its charter constituted a grant of a right to charge the rates therein named; that it built its road and established its business with this grant as a part of its charter; and that such a grant is a contract between it and the State of Georgia, the obligation of which cannot be impaired by its legislation; and this contention is renewed in this court.

The constitution of Georgia, adopted in December, 1877, vested in the General Assembly of the State, the designation given to its legislature, the power to regulate "railroad freights and passenger tariffs," so as to prevent unjust discriminations and require reasonable and just rates; and made it the duty of that body to pass laws from time to time to accomplish this end, and to prohibit, by adequate penalties, the charging of other than such rates. Art. IV, § 2, Appendix to Code of Georgia, 1882.

Pursuant to this provision of the constitution, the act of October 14, 1879, was passed, providing for the appointment

of three railroad commissioners, and authorizing them to pre-scribe the rates of fare which railroad companies might charge for the carriage of persons and merchandise within the limits of the State. The act does not extend to interstate railroad transportation. Laws of Georgia, 1878–9, 125.

After authorizing the appointment of the three commis-sioners by the governor, the act declares that any railroad company doing business in the State, after its passage, which shall charge or receive more than a fair and reasonable toll or compensation for the transportation of passengers or freight of any description, or for the use or transportation of any rail-road car upon its track or branches, or upon any railroad which it has the right to use, shall be deemed guilty of extortion, and upon conviction thereof shall be subject to certain penal-ties prescribed.

The commissioners appointed are required to make reason-able and just rates of freight and passenger tariffs to be ob-served by all railroad companies doing business in the State on their roads, and to provide for each of the companies a schedule of just and reasonable rates of charges for the trans-portation of passengers and freight; and the act declares that in suits brought against any of the companies, involving un-just charges or discriminations, such schedule shall be taken in the courts of the State as sufficient evidence that the rates prescribed are just and reasonable.

The commissioners are required from time to time, and as often as circumstances may call for it, to change and revise the schedules, and penalties are prescribed for the enforcement of their regulations.

The Supreme Court of the State held, on an application for an injunction in this case, that this delegation of authority by the legislature to the commissioners, to prescribe what shall be reasonable and just rates for the carriage and transporta-tion of persons and property over railroads within its limits, was a proper exercise of its own power to provide protection to its citizens against unjust rates for such transportation and to prevent unjust discriminations; and that it was expected, not that the legislature would itself make specific regulations as

to what should in each case be a proper charge, but that it would simply provide the means by which such rates should be ascertained and enforced.

It has been adjudged by this court in numerous instances that the legislature of a State has the power to prescribe the charges of a railroad company for the carriage of persons and merchandise within its limits, in the absence of any provision in the charter of the company constituting a contract vesting in it authority over those matters, subject to the limitation that the carriage is not required without reward, or upon conditions amounting to the taking of property for public use without just compensation; and that what is done does not amount to a regulation of foreign or interstate commerce. *Stone* v. *Farmers' Loan and Trust. Co.*, 116 U. S. 307, 325, 331; *Dow* v. *Beidelman*, 125 U. S. 680. The incorporation of the company, by which numerous parties are permitted to act as a single body for the purposes of its creation, or as Chief Justice Marshall expresses it, by which "the character and properties of individuality" are bestowed "on a collective and changing body of men," *Providence Bank* v. *Billings*, 4 Pet. 514, 562; the grant to it of special privileges to carry out the object of its incorporation, particularly the authority to exercise the State's right of eminent domain that it may appropriate needed property, — a right which can be exercised only for public purposes; and the obligation, assumed by the acceptance of its charter, to transport all persons and merchandise, upon like conditions and upon reasonable rates, affect the property and employment with a public use; and where property is thus affected, the business in which it is used is subject to legislative control. So long as the use continues, the power of regulation remains, and the regulation may extend not merely to provisions for the security of passengers and freight against accidents, and for the convenience of the public, but also to prevent extortion by unreasonable charges, and favoritism by unjust discriminations. This is not a new doctrine but old doctrine, always asserted whenever property or business is, by reason of special privileges received from the government, the better to secure the purposes to which the property is dedi-

cated or devoted, affected with a public use. There have been differences of opinion among the judges of this court in some cases as to the circumstances or conditions under which some kinds of property or business may be properly held to be thus affected, as in *Munn* v. *Illinois*, 94 U. S. 113, 126, 139, 146; but none as to the doctrine that when such use exists the business becomes subject to legislative control in all respects necessary to protect the public against danger, injustice, and oppression. In almost every case which has been before this court, where the power of the State to regulate the rates of charges of railroad companies for the transportation of persons and freight within its jurisdiction has been under consideration, the question discussed has not been the original power of the State over the subject, but whether that power had not been, by stipulations of the charter, or other legislation, amounting to a contract, surrendered to the company, or been in some manner qualified. It is only upon the latter point that there have been differences of opinion.

The question then arises whether there is in the 12th section of the charter of the plaintiff in error a contract that it may make any charges within the limits there designated. The first clause would seem to have been framed upon the theory, which obtained very generally at the date of the charter, that a railroad was subject, like an ordinary wagon road, to the use of all persons who were able to place the necessary conveyances upon it. It was then generally supposed that whilst the company constructing the road was the owner of the roadbed, any one could run cars upon it upon payment of established tolls and following the regulations prescribed for the management of trains; and some charters granted at that period contained schedules of charges for such use. But this notion has long since been abandoned as impracticable. *Lake Superior and Mississippi Railroad Co.* v. *United States*, 93 U. S. 442, 446–449. The section grants to the company the exclusive right of transportation of persons and merchandise over its road, a right which in another part of the act is limited to thirty-six years, and then expires unless renewed by the legislature upon such terms as may be prescribed by law

and accepted by the company. This period has long since expired, and we are not informed that any renewal of the privilege has been made.

The difficulty attending the construction of the clause following this one arises from the doubt attached to the meaning of the term "provided." The general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute, or from some provisions of it, or to qualify the operation of the statute in some particular. But it is often used in other senses. It is a common practice in legislative proceedings, on the consideration of bills, for parties desirous of securing amendments to them, to precede their proposed amendments with the term "provided," so as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail, thus having no greater signification than would be attached to the conjunction "but" or "and" in the same place, and simply serving to separate or distinguish the different paragraphs or sentences. Several illustrations are given by counsel of the use of the term in this sense, showing, in such cases, where an amendment has been made, though the provision following often has no relation to what precedes it.

It does not matter in the present case, whether the term be construed as imposing a condition on the preceding exclusive grant to the company of the privilege of transporting passengers and merchandise over its own roads, or be considered merely as a conjunction to an independent paragraph, declaring a limitation upon the charges which the company may make. If considered as a condition to the enjoyment of the exclusive right designated, then the section only provides that, so long as the maximum of rates specified is not exceeded, the company or its lessee shall have the exclusive right to carry passengers and merchandise over its roads. It contains no stipulation, nor is any implied, as to any future action of the legislature. If the exclusive right remain undisturbed, there can be no just ground of complaint that other limitations than those expressed are placed upon the charges authorized. It would require much clearer language than this to justify us in

holding that, notwithstanding any altered conditions of the country in the future, the legislature had, in 1833, contracted, that the company might, for all time, charge rates for transportation of persons and property over its line up to the limits there designated.

It is conceded that a railroad corporation is a private corporation, though its uses are public, and that a contract embodied in terms in its provisions, or necessarily implied by them, is within the constitutional clause prohibiting legislation impairing the obligation of contracts. If the charter in this way provides that the charges, which the company may make for its services in the transportation of persons and property, shall be subject only to its own control up to the limit designated, exemption from legislative interference within that limit will be maintained. But to effect this result, the exemption must appear by such clear and unmistakable language that it cannot be reasonably construed consistently with the reservation of the power by the State. There is no such language in the present case. The contention of the plaintiff in error therefore fails, and the judgment must be

*Affirmed.*