Little Rock. MORRIS M. COHN.

---

RICHMOND & D. R. CO. v. TRAMMEL et al., Railroad Commissioners.

(Circuit Court, N. D. Georgia. November 4, 1892.)

1. CONSTITUTIONAL LAW—RAILROAD COMMISSIONS — FIXING RATES — REASONA-
BLENESS.
  A state statute empowering railroad commissions to establish just and
  reasonable rates, and making the order of the commissioners fixing rates
  conclusive evidence of their reasonableness, would be repugnant to the
  constitution of the United States, as depriving the railroads of due process
  of law; for the reasonableness of any rates fixed by the commission is
  a question for judicial determination, according to the methods of inves-
  tigation appertaining to courts of justice. Chicago, M. & St. P. Ry. Co.
  v. Minnesota, 10 Sup. Ct. Rep. 462, 702, 134 U. S. 418, followed.

**2. SAME—INJUNCTION—CONSTITUTIONAL LAW.**

Laws Ga. 1879, empower the state railroad commission to fix "reasonable and just" rates, and declare that in any suits against railroads involving their charges for freight or passengers the schedule of rates fixed by the commission shall be deemed "sufficient evidence" that the rates therein fixed are just and reasonable. Code Ga. § 3748, defines "sufficient evidence" to mean "that which is satisfactory for the purpose." *Held*, that, in the absence of any interpretation of the statute of 1879 by the state courts, a railroad company cannot maintain a suit to enjoin the commissioners from instituting suits to collect penalties for alleged violations of rates fixed by them on the ground that the statute denies to the company its constitutional right to offer evidence as to what are reasonable rates; for it does not appear that the state courts will necessarily hold that "sufficient evidence" means conclusive evidence. Chicago, M. & St. P. Ry. Co. v. Minnesota, 10 Sup. Ct. Rep. 462, 702, 134 U. S. 418, distinguished.

In Equity. Bill by the Richmond & Danville Railroad Company against L. M. Trammel, Virgil Powers, and Allen Fort, constituting the railroad commission of the state of Georgia, to enjoin them from instituting suits to collect penalties for alleged violations of a certain freight rule established by the commission. Injunction denied.

Barrow & Thomas, for plaintiff.
W. A. Little and Allen Fort, for defendants.

Argued before NEWMAN, District Judge, and PARDEE, Circuit Judge.

NEWMAN, District Judge. This is a bill brought by the Richmond & Danville Railroad Company, a Virginia corporation, against L. M. Trammel and others, as members of and constituting the railroad commission of the state of Georgia, under an act of the general assembly approved October 14, 1879. The purpose of the bill is to enjoin the defendants from instituting against complainant a large number of proceedings in the various counties of this district to enforce and collect penalties for alleged violations by complainant of a certain freight rule established by said commission. The rule relates to joint rates of freight to be collected by roads not under the same control, and this rule is claimed by the railroad corporation to be unreasonable and unjust. The whole scheme of legislation in Georgia in reference to the powers and duties of the railroad commission is that the commission shall fix "reasonable and just rates of freight and passenger tariff." The provision on this subject, embodied in the constitution of 1877, art. 4, § 2, par. 1, is as follows:

"The power and authority of regulating railroad freight and passenger tariffs, preventing unjust discrimination, and requiring reasonable and just rates of freight and passenger tariffs, are hereby conferred upon the general assembly, whose duty it shall be to pass laws, from time to time, to regulate freight and passenger tariffs, to prohibit unjust discrimination on the various railroads in this state, and to prohibit said roads from charging other than just and reasonable rates, and enforce the same by adequate penalties."

The act of the legislature of October 14, 1879, (Acts 1879, p. 125,) to carry into effect this constitutional provision, provides for the establishment of a railroad commission, and gave to it authority "to make for each of the railroad corporations doing business in this state, as soon as practicable, a schedule of just and reasonable rates

of charges for transportation of passengers and freight and cars on each of said railroads." The act of the legislature of October 29, 1889, (Acts 1889, p. 131,) gives to the commission the "power to make just and reasonable joint rates for all connecting railroads doing business in this state, as to all traffic or business passing from one of said roads to another." It will be perceived, therefore, that, as stated, the powers of the commission are to establish "reasonable and just" rates for the railroad companies of the state.

The contentions of complainant are—First, that the order or rule of the railroad commission in reference to joint rates is unreasonable and unjust; second, that by the terms of the act of the legislature of 1879, establishing the railroad commission, and fixing its powers and duties, and prescribing modes of procedure, etc., it will not have an opportunity, in the suits which the railroad commission proposes to institute to enforce the penalties against it, to show this fact; the provision of the act being that the schedule of rates established by the commission "shall, in suits brought against any such railroad corporation wherein is involved the charges of any such railroad corporation for the transportation of any passenger or freight or cars, or unjust discrimination in relation thereto, be deemed and taken in all courts in this state as sufficient evidence that the rates therein fixed are just and reasonable rates of charges for transportation of passengers and freight and cars upon the railroads;" third, that, the effect of this last provision being to deprive it of the right of showing that the rates fixed are not "reasonable and just," the rate fixed by the commission being itself evidence of its reasonableness, the collection of these penalties, without giving it an opportunity to be heard, will be depriving it of its property without due process of law; and, in so far as it is deprived of the same right of defense in the courts that other litigants would have under the same circumstances, it is denied the equal protection of the laws.

The contentions of the defendants are—First, that this is, in effect, a suit against the state, and therefore cannot be maintained; secondly, that the rate fixed is "just and reasonable," taking issue squarely with complainant as to that; thirdly, that, although they do not deny that the effect of the provisions of the act of 1879, making the rates of the commission sufficient evidence, etc., will be as claimed by the complainant, still, that it is not thereby deprived of any constitutional rights.

It is proper first to dispose of the question raised. That is, in effect, a proceeding against the state. Without going into a discussion of the decisions on this subject, or seeking to apply them to the facts of this case, I call attention to the decision of Circuit Judge McCormick in the recent case of Mercantile Trust Co. v. Texas & P. Ry. Co. and Reagan and others, constituting the railroad commission of Texas, 51 Fed. Rep. 529. Precisely the same question was raised there that is presented here, except it is not shown whether there, as here, suits for penalties will proceed in the name of the state. Suits in equity were brought to restrain the railroad commission of the state from enforcing certain rates of freight and passenger traffic established by it, and from enforcing penalties; and it was con-

tended by the railroad commission that the proceedings were, in effect, against the state.    Judge McCormick says:

"As to the contention that these are suits against the state, it seems clear to me that the latest decisions of the supreme court settle that question against the defendants. In Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. Rep. 699, the construction and application of the eleventh amendment is fully discussed, the earlier decisions reviewed, their doctrine extracted, the line clearly marked between these cases against state officers which are suits against the state in the sense of that amendment and those which are not, and these cases come plainly wi hin the latter class. As suggested to the counsel at the hearing, we cannot reason against the authority of the supreme court, nor give an additional weight by our indorsement or agreement. Whereas, in the case last cited, that court has construed the earlier cases and announced the rule, the limit of our office is to arrive at the right in the cases on trial by that rule; and it appears to me not to admit of question that on the authority of that case these are not suits against the state, within the meaning of the eleventh amendment."

While it is perhaps unnecessary, in the view taken of the case, to decide the question here, still I would be disposed in this case to adopt the views of the circuit judge in the Texas case, as quoted above, if a determination of the question was deemed necessary.

The parties here are at issue as to whether or not the joint rate complained of is "reasonable and just." That it is unreasonable and unjust is asserted on the one hand, and denied on the other. If the rate is not "reasonable and just," will the railroad company have an opportunity to show this before the penalties are enforced against it, under the peculiar provisions of the act of 1879, making the schedule sufficient evidence of its reasonableness? The case which is mainly relied upon here, of course, by the complainant, is the case of Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. Rep. 462, 702. The language of the supreme court in that case, so far as it is necessary to quote here, is as follows:

"The construction put upon the statute by the supreme court of Minnesota must be accepted by this court, for the purposes of the present case, as conclusive, and not to be re-examined here as to its propriety or accuracy. The supreme court authoritatively declares that it is the expressed intention of the legislature of Minnesota, by the statute, that the rates recommended and published by the commission, if it proceeds in the manner pointed out by the act, are not simply advisory, nor merely prima facie equal and reasonable, but final and conclusive as to what are equal and reasonable charges; that the law neither contemplates nor allows an issue to be made, or inquiry to be had, as to their equality or reasonableness in fact; that, under the statute, the rates published by the commission are the only ones that are lawful,— therefore, in contemplation of law, the only ones that are equal and reasonable; and that, in a proceeding for a mandamus under the statute, there is no fact to traverse except the violation of law in not complying with the recommendations of the commission. In other words, although the railroad company is forbidden to establish rates that are not equal and reasonable, there is no power in the courts to stay the hands of the commission, if it chooses to establish rates that are unequal and unreasonable. This being the construction of the statute by which we are bound in considering the present case, we are of opinion that, so construed, it conflicts with the constitution of the United States in the particulars complained of by the railroad company. It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission, which, in view of the powers conceded to it

by the state court, cannot be regarded as clothed with judicial functions, or possessing machinery of a court of justice."

### And later in the opinion is the following:

"The question of the reasonableness of a rate of charge for transportation by a railroad company, involving, as it does, the element of reasonableness, both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination. If the company is deprived of power of charging reasonable rates for use of its property, and such deprivation takes place in the absence of an investigation by judicial machinery, it is deprived of the lawful use of its property, and thus, in substance and effect, of the property itself, without due process of law, and in violation of the constitution of the United States; and, in so far as it is thus deprived, while other persons are permitted to receive reasonable profits upon their invested capital, the company is deprived of the equal protection of the law."

The effect of this decision by a majority of the supreme court of the United States is that the question of the reasonableness of a rate fixed by a railroad commission is one for judicial determination.

Counsel for defendants here contend that this decision should be restricted to the case made by the Minnesota statute, and the peculiar facts existing there. The principle announced is too clear, and the rule laid down is too broad, to be thus restricted. It is also claimed that the decision in Budd v. New York, 143 U. S. 517, 12 Sup. Ct. Rep. 468, by its reaffirmance of the Munn Case, 94 U. S. 113, is, in effect, a departure from the Minnesota case. The language of the supreme court in the Budd Case, in reference to the decision in the Minnesota case, is as follows:

"It is further contended that, under the decision of this court in Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. Rep. 462, 702, the fixing of elevator charges is a judicial question, as to whether they are reasonable or not; that the statute must permit and provide for a judicial settlement of the charges; and that, by the statute under consideration, an arbitrary rate is fixed, and all inquiry is precluded as to whether that rate is reasonable or not. But this is a misapprehension of the decision of this court in the case referred to. In that case the legislature of Minnesota had passed an act which established a railroad and warehouse commission, and the supreme court of that state had interpreted the act as providing that the rates and charges for the transportation of property by railroads recommended and published by the commission should be final and conclusive as to what were equal and reasonable charges, and there could be no judicial inquiry as to the reasonableness of such rates. A railroad company, in answer to an appplication for a mandamus, contended that such rates in regard to it were unreasonable; and, as it was not allowed by the state court to put in testimony in support of its answer on the question of the reasonableness of such rates, this court held that the statute was in conflict with the constitution of the United States, as depriving the company of its property without due process of law, and depriving it of equal process of law. That was a very different case from the one under the statute of New York in question here, for in this instance the rate of charge is fixed directly by the legislature. See Spencer v. Merchant, 125 U. S. 345, 356, 8 Sup. Ct. Rep. 921. What was said in the opinion of the court in 134 U. S. and 10 Sup. Ct. Rep. had reference only to the case then before the court, and to charges fixed by a commission appointed under an act of the legislature, under a constitution of a state which provides that all corporations being common carriers should be bouhd to carry 'on equal and reasonable terms,' and under a statute which provides that all charges made by a common carrier for the transportation of passengers or property should be 'equal and reasonable.' What was said in the opinion in 134 U. S. and 10 Sup. Ct. Rep. as to the question of the reasonableness of the rate of charge being one for judicial in-

vestigation had no reference to a case where the rates are prescribed directly by the legislature."

There is nothing in this language to justify the argument that the supreme court intended any departure from the rule announced in the Minnesota case, namely, that where a railroad commission had authority to fix "just and reasonable" rates, the question of their reasonableness is one for judicial investigation. So it seems clear that the rule laid down in the Minnesota case is the proper rule to be applied in this case, and, when correctly applied, should control it.

Now, under this act of the legislature of Georgia, if these proceedings to enforce penalties are instituted, will the railroad company be allowed a judicial investigation, by ordinary and proper judicial procedure, as to the reasonableness of the rates in question? It will be seen that the whole case for complainants rests on the assumption that the term "sufficient evidence," as used in the act of 1879, is, in its practical effect, the same as "conclusive evidence;" that is, that the introduction of the schedule of rates fixed by the commission would be, of itself, sufficient evidence of its reasonableness, and would establish it as a fact in the case. I have some difficulty as to the meaning of the term "sufficient evidence." The definition of "sufficient evidence" in Code Ga. § 3748, is "that which is satisfactory for the purpose." The definition of "sufficient evidence" in 1 Greenl. Ev. § 2, is:

"By 'satisfactory evidence,' which is sometimes called 'sufficient evidence,' is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt. The circumstances which will amount to this degree of proof can never be previously defined. The only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest."

This definition is more favorable to complainant than any that counsel produced or the court has found. In the case of Tilley v. Commissioners, 4 Woods, 448, 5 Fed. Rep. 641, which was a suit to enjoin the commissioners, Judge Woods refers to this term "sufficient evidence," as used in the act of 1879, in the following language:

"In this provision the legislature has exercised the power exercised by all the legislatures, both federal and state, of prescribing the effect of evidence; and it has done nothing more. Even in criminal cases, congress has declared that certain facts proven shall be evidence of guilt. For instance, in section 3082 of the United States Revised Statutes, it is provided that whenever, on an indictment for smuggling, the defendant is shown to be in the possession of smuggled goods, 'such possession shall be deemed evidence sufficient to authorize a conviction, unless the defendant shall explain the possession to the satisfaction of the jury.' The statute books are full of such acts, but it has never been considered that this impairs the right of trial by jury."

There is no decision of the supreme court of the state, so far as I am informed, construing this provision of the act in question. In the case of Georgia Railroad v. Smith, 70 Ga. 694, in which the constitutionality of the railroad commission act of Georgia was drawn in question, there is no discussion whatever of this term "sufficient evidence," and, so far as it appears, the question was not raised in that case. This last-mentioned case was taken to the supreme court of

the United States (Georgia Railroad & Banking Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. Rep. 47,) and the decision of the supreme court of the state, which was favorable to the railroad commission, was affirmed, and there still appears no reference to this particular language; so that the case of Tilley v. Commissioners, supra, is the only judicial construction of this term as used in the Georgia commission act. In the case of Kelly v. Jackson, 6 Pet. 622, the supreme court of the United States defined prima facie evidence to be such as in the judgment of the law is "sufficient to establish the fact, and, if not rebutted, remains sufficient for the purpose." To the same effect see U. S. v. Wiggins, 14 Pet. 346, 347; Lilienthal's Tobacco v. U. S., 97 U. S. 268. Sufficient evidence in a statute means prima facie, or more. Rap. & L. Law Dict., citing Wilb. St. Law, 139, 140. In the Century Dictionary, lately published, sufficient evidence is defined to be "such evidence as in amount is adequate to justify the court or jury in adopting the conclusion in support of which it is adduced." The definition of "sufficient evidence" as given in the Code of Georgia, however, ought to be taken in construction of a Georgia statute. If it was the intention of the legislature that the schedule of rates fixed by the commission should be final and conclusive on the subject of reasonableness in suits brought against any railroad involving charges for transportation of freight, it is difficult to see why they did not use the term "conclusive evidence," instead of the term "sufficient evidence."

In the Minnesota case the supreme court held that the Minnesota statute was in conflict with the constitution of the United States, as depriving the railroad company of its property without due process of law, and depriving it of the equal protection of the laws, because the Minnesota statute, as construed by the supreme court of the state, which construction was final, provided that the rates of charges for the transportation of property by railroads, recommended and published by the commission, should be final and conclusive as to what were equal and reasonable charges, and that there could be no judicial inquiry as to the reasonableness of such rates. In the case of Georgia Railroad v. Smith, supra, the supreme court of the state used this language in the opinion:

"While we hold the act of October 14, 1879, constitutional, and the orders of the commission valid and binding, yet we are not to be understood as holding that their powers are unlimited, or beyond the legal control by the proper authorities of the state. On the contrary, we hold that the powers which have been conferred upon them are to be exercised within legal and constitutional limitations, and in such way as not to invade the legal and constitutional rights of others."

The meaning, of the foregoing language clearly is that this law shall not be construed by the courts in such a way as to deprive any person or corporation of legal or constitutional rights.

The supreme court of the United States declares in the Minnesota case that it is a constitutional right of a railroad company, when sued for violation of rates of transportation as fixed by a railroad commission, to have a hearing, and offer evidence as to the reasonableness of such rates. The supreme court of Georgia says that "powers of

the railroad commission must be exercised within legal and constitutional limitations." It is evident, therefore, that if any other construction can be given the term "sufficient evidence" than that it is conclusive evidence, the courts of the state will adopt that construction which will not deprive the complainant, or any other railroad company, of its constitutional rights to a hearing; and this court is not sufficiently convinced that the state courts will be compelled to rule against the railroad companies as to the right to offer evidence to justify it in granting the injunction here prayed for on this assumption. Certainly the courts of the state will, if it can be done, give the term in question a construction consistent with its constitutionality, and which will allow the railroad company a full hearing as to the reasonableness of the rate fixed by the commission.

It is not intended by this decision, or anything said in the foregoing opinion, to hold that in a proper case a railroad company would not have the right to relief against the railroad commission, to restrain it from enforcing rates clearly unreasonable and unjust, and which, in the language of the supreme court, amount to confiscation. In the sixth proposition stated by Mr. Justice Miller in his concurring opinion in the Minnesota case, he uses the following language:

"That the proper, if not the only, mode of judicial relief against the tariff of rates established by the legislature, or by its commission, is by a bill in chancery, asserting its unreasonable character and its conflict with the constitution of the United States, and asking a decree of court forbidding the corporation from exacting such fare as excessive, or establishing its right to collect the rates, as being within the limits of a just compensation for the services rendered."

To the same effect is the recent decision of Circuit Judge McCormick in the case of Mercantile Trust Co. v. Texas & P. Ry. Co. and Reagan and others, constituting the railroad commission of Texas, recently decided, and hereinbefore alluded to. It will be understood, of course, that the railroad commission would be a useless piece of machinery, if, within reasonable limits, it could not fix rates; but when it goes beyond this, and its action becomes confiscation, then a proper case would be made for the application of the rule, clearly established by the Minnesota case.

The unreasonableness of the rate in question here is as stoutly denied as it is asserted, and the court could not be expected, and, indeed, it has not been requested, to hold the joint rate complained of here unreasonable or unjust; the inquiry here being restricted to the constitutionality of the act of the legislature for the reasons above set forth. This court, not being satisfied that it will be necessary for the state courts, in suits that may be instituted for penalties, to hold the rate fixed by the commission conclusive evidence on the trial, cannot grant the injunction as prayed for, and it must be denied.

PARDEE, Circuit Judge, who has had the bill, answer, and briefs of counsel in this case, and who has kindly given the case consideration at my request, authorizes me to state his concurrence in this decision.