### ROYAL MFG. CO. v. SPRADLIN.
### No. 95.

District Court, M. D. North Carolina, Winston Salem Division.

Feb. 5, 1934.

As Amended June 11, 1934.

E. C. Bivens, of Mount Airy, N. C., for plaintiff.

John J. Ingle, of Winston Salem, N. C., for defendant.

HAYES, District Judge.

The Royal Manufacturing Company drew a draft, with bill of lading attached, on Chatham Manufacturing Company of Elkin, N. C., which was sent by the American Trust Company of Charlotte, N. C., through the usual banking channels, to the Elkin National Bank for collection and remittance. The Elkin National Bank presented the draft to the Chatham Manufacturing Company, and the Chatham Manufacturing Company paid

it with a check on its deposit in the Elkin National Bank. The draft was marked paid and delivered to the Chatham Manufacturing Company, and the check was marked paid and charged to the account of the Chatham Manufacturing Company. The Chatham Manufacturing Company had on deposit funds more than sufficient to satisfy the check, and the Elkin National Bank had cash on hand more than sufficient to pay the Chatham Manufacturing Company's check. The Elkin National Bank kept its cash reserve account with the Wachovia Bank & Trust Company, and drew a draft against this amount and sent it to the American Trust Company in payment of the proceeds of the draft, but before the draft cleared the Wachovia Bank & Trust Company, the Elkin National Bank was placed in the hands of a receiver. The Elkin National Bank had in the Wachovia Bank & Trust Company cash on deposit more than sufficient to pay this draft, and it remained on deposit at the time of the appointment of the receiver, and the receiver took possession of the deposit.

C. S. Supp. N. C. 1924, § 218 (c), subsec. 14, as amended by Pub. Laws 1927, c. 113, contains the following: "The word 'asset' used herein shall not be deemed to include bailments or other property to which such banks has no title. Provided, that when any bank, or any officer, clerk, or agent thereof, receives by mail, express or otherwise, a check, bill of exchange, order to remit, note, or draft for collection, with request that remittance be made therefor, the charging of such item to the account of the drawer, acceptor, indorser, or maker thereof, or collecting any such item from any bank or other party, and failing to remit therefor, or the non-payment of a check sent in payment therefor, shall create a lien in favor of the owner of such item on the assets of such bank making the collection, and shall attach from the date of the charge, entry or collection of any such funds."

Under the law in this state prior to the enactment of this statute in 1927, the holder of a draft which had been sent to the bank for collection, and which had been collected by the bank on one of its depositors, was not entitled to a preference. First Nat'l Bank v. Davis, 114 N. C. 343, 19 S. E. 280, 41 Am. St. Rep. 795; Corporation Com. v. Bank, 137 N. C. 697, 50 S. E. 308; N. Car. Corp'n Com. (Pine Hall Brick Company) v. Bank of Hamlet, 192 N. C. 823, 135 S. E. 342; Braswell v. Bank, 197 N. C. 229, 148 S. E. 236, 238.

While Braswell v. Bank, supra, was decided after the enactment of the statute, the facts in the case occurred before the statute was enacted.

This statute was construed by the Supreme Court of North Carolina in Morecock v. Hood, 202 N. C. 321, 162 S. E. 730, 731, in which Judge Adams says: "The proviso applies to the receipt by any bank of a check, etc., with request that remittance, not manual delivery, be made therefor. One of the conditions imposing liability is a failure to remit, or 'the non-payment of a check sent in payment therefor.' The language excludes the idea of a direct communication when the depositor goes to the bank and personally presents his check for payment." Plaintiff was denied the lien because the check was not sent by mail or express. In re Liquidation of Bank of Pender, 204 N. C. 143, 167 S. E. 561, and Board of Education v. Hood, 204 N. C. 353, 168 S. E. 522, denied the existence of the lien for the same reason.

Notwithstanding the large number of bank failures which have occurred in North Carolina since 1927, the Supreme Court of this state has not been asked to interpret this statute except as above referred to, for the reason, no doubt, that receivers have respected the law as expressed in that statute by treating the proceeds of a collection not as assets of a bank, but as a fund belonging to the one for whom collected. This statute clearly supersedes the law as declared by the Supreme Court in Corporation Commission v. Bank, supra, and similar decisions. The North Carolina statute embodies what was declared to be the law by the United States Supreme Court in Dakin v. Bayly, decided November 20, 1933, 290 U. S. 143, 54 S. Ct. 113, 78 L. Ed. 229, where it was held that the forwarding bank of a draft for collection is nothing but the agent of the drawer, and that this agency continues until the proceeds are remitted, and that the forwarding bank is not a creditor of the collecting bank and for this reason cannot offset such items against its debt to the collecting bank. It is there held that the owners of the drafts were entitled to collect the same from the collecting bank; that the forwarding bank could not take any position of its own initiative, without affecting the owner's consent and the pre-existing relation of principal and subagent between the owner and the collecting bank.

The purpose of this statute is to require faithful performance of an agency enterprise which a reasonable standard of morals would call for.

The decisions of this circuit may appear to be in conflict with the views expressed in this opinion, but an examination and analysis of them will show that they have not had the controlling facts and this statute presented. The last decision, Lifsey v. Goodyear Tire & Rubber Co., Inc. (C. C. A.) 67 F.(2d) 82, holds the facts do not come within the Virginia statute. It does not contain a provision applying to the bank's charging the collection against the account of the depositor, whereas the North Carolina statute does. The collection had not been completed, nor remitted. The manifest purpose of the North Carolina statute is to place the out of town holder of a check or draft on a footing as favorable as the one occupied by the local depositor. The local depositor can present his check and get the cash. If the bank collects the out of town check or draft received through the mails by charging it to the account of its customer, it is the bank's duty, under this statute, to remit the proceeds to the owner, and the owner has a lien thereon. The proceeds of the collection rightfully belong to the owner of the draft; thereafter they are not the property of the bank, and the general creditors have no right to participate therein.

The receiver contends that the statute relates only to the distribution of assets of an insolvent bank, directed entirely to state banks, but, if intended to apply to national banks, it conflicts with the federal statute requiring ratable distribution (12 USCA §§ 91, 194), and is void as to them, relying on Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700. The state statute in that case undertook, only in the event of insolvency, to make one general depositor preferred over another, which was repugnant to the acts of Congress, and void. The acts of Congress in regard to the creation, operation, and liquidation of national banks are paramount to state legislation, but it does not follow that state legislation cannot apply when not repugnant to the acts of Congress. At page 287 of 161 U. S., 16 S. Ct. 502, 505, it is said: "It is certain that, in so far as not repugnant to acts of Congress, the contracts and dealings of national banks are left subject to the state law, and upon this undoubted premise, which nothing in this opinion gainsays, the proposition is advanced that the deposit here considered of the savings bank with a national bank imported a contract to pay the claim of the former with the preference allowed by the New York statute. But this overlooks the plain terms of the New York law. That stat-

ute does not profess to deal with the bank and its relations as a going concern; it wholly and exclusively undertakes to regulate the distribution of the assets after insolvency. Insolvency, and insolvency alone, is made the criterion from which the preference is to arise." Again, on page 288 of 161 U. S., 16 S. Ct. 502, 506, it is said: "True it is that where, by state law, a lien is made to result from a particular contract, that lien, when its existence is not incompatible with the act of congress, will be enforced."

Referring to Rev. St. § 5242 (12 US CA § 91), and Rev. St. § 5236 (12 USCA § 194), in Scott v. Armstrong, 146 U. S. 499, at page 510, 13 S. Ct. 148, 151, 36 L. Ed. 1059, the court said: "Liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated. The provisions of the act are not directed against all liens, securities, pledges, or equities, whereby one creditor may obtain a greater payment than another, but against those given or arising after or in contemplation of insolvency."

The dealings and contracts of national banks are governed by general state laws except where they expressly conflict with the laws of the United States, or frustrate the purpose for which the national banks were created or impair their efficiency. McClellan v. Chipman, 164 U. S. 347, 357, 17 S. Ct. 85, 41 L. Ed. 461; First National Bank v. Union Trust Co., 244 U. S. 416, 426, 37 S. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169. In First National Bank in St. Louis v. Missouri, 263 U. S. 640, 44 S. Ct. 213, 68 L. Ed. 486, a statute of Missouri prohibited any bank from operating a branch bank. In a suit by the state to enjoin a national bank from operating a branch bank, the national bank denied the authority of the state over it, but the Supreme Court held the statute applied to national banks for the reason that the legislation did not conflict with the acts of Congress. In this case, on page 656 of 263 U. S., 44 S. Ct. 213, 215, it is said: "Nevertheless, national banks are subject to the laws of a state in respect of their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States."

The mere fact that the proviso is attach-

ed to a section of the North Carolina statute dealing with the distribution of the assets of insolvent banks does not confine its operation to insolvent banks. It clearly establishes a lien in favor of one who sends by mail, etc., a draft, etc., for collection, with request that remittance be made therefor, and which is collected by charging it to the account in the bank, and failing to remit therefor, or the nonpayment of a check sent in payment therefor, which lien attaches to the assets of the bank making the collection from the date of the charge, entry, or collection of any such funds. The lien, therefore, is in no wise contingent upon the insolvency of the bank. It attaches, in all cases, "from the date of the charge, entry or collection of any such funds." The lien exists before insolvency and subsequent insolvency does not invalidate it. Moreover, it is not attempting to prefer one creditor over another in cases of insolvency, but the purpose of the act is to make a lien against the assets of any collecting bank until it pays the proceeds of collection made by it as agent. The language is perfectly plain. It was to put an end to court decisions making the collecting bank a mere common debtor and denying the principal the right to reach his property in the hands of his agent.

The banks receive a fee for collecting drafts sent to them. If a lien attaches in favor of the sender, if sent to a state bank, a national bank would be unable to compete in that field, with a state bank, if a similar lien does not attach against the assets of a national bank.

■ It is true, as contended by the Receiver, that the purpose of a proviso is to modify the enacting clause and not to enlarge it or confer a power. But the general principle has no application when the language of the proviso plainly implies a specific intent on the part of the legislature, for, in such cases, it must be construed, in accordance with the language, although it may enlarge the scope of the act, or assume the force of an independent enactment.

In Propst v. Southern R. Co., 139 N. C. 397, 399, 51 S. E. 920, 921, it is said, in considering a proviso: "The intention of the lawmaker, if plainly expressed, must have the force of law, though it may be in the form of a proviso; the intention expressed being paramount to form." There the Court was determining whether the proviso affecting railroads applied only to domestic railroads, or to foreign railroads also. The Court did not restrict it to domestic, but applied it to foreign, railroads to carry out the legislative intent. This decision apparently answers the receiver's contention that the bank, referred to in the proviso, is a state bank, and not a national bank. But the statute says, "when any bank, etc.," which plainly shows its application to all banks and the creation of a lien against its assets for the proceeds of a collection where the check or draft is sent by mail, or otherwise, for collection and remittance. The language is plain and explicit. It is our duty to declare it accordingly.

The Supreme Court of the United States has adopted the same rule of construing a proviso. Railroad v. Smith, 128 U. S. 174, 9 S. Ct. 47, 32 L. Ed. 377; Springer v. Philippine Islands, 277 U. S. 189, 207, 48 S. Ct. 480, 484, 72 L. Ed. 845. In the latter case it is said: "We think rather that both provisos are to be construed as independent and substantive provisions. As this court has more than once pointed out, it is not an uncommon practice in legislative proceedings to include independent pieces of legislation under the head of provisos. See Gerogia Banking Company v. Smith, 128 U. S. 174, 181, 9 S. Ct. 47, 32 L. Ed. 377; White v. United States, 191 U. S. 545, 551, 24 S. Ct. 171, 48 L. Ed. 295; Cox v. Hart, 260 U. S. 427, 435, 43 S. Ct. 154, 67 L. Ed. 332."

The proviso did not create a preference; it created a statutory lien. The lien was not contingent upon the bank becoming insolvent; it attached upon the collection of the item. Of necessity the bank would be open and transacting business in order to make the collection. The legislature used the word "preference" everywhere in the act preceding the proviso, but it used the word "lien" advisedly and to make it apply without regard to preferences.

■ Assuming then that the state statute is applicable to national banks, does it conflict with the acts of Congress or frustrate the purposes for which national banks are created? Congress has not legislated at all on the liabilities of a bank as collecting agent. It has provided for the distribution of the assets of insolvent banks. 12 USCA § 194. But the provisions of this statute and 12 USCA § 91 do not conflict with the North Carolina statute, nor does that statute in any way frustrate the objects for which national banks are created.

■ The case of Dakin v. Bayly, supra, involved the construction of a state statute in regard to set-off, and the decision turned on the construction of the state statute. It is an

authority also for the proposition that the collecting bank is agent, not alone to· collect, but to remit the proceeds of the collection. In view of this decision and of the others cited above, and of the state statute here involved, the assets in the possession of the receiver are subject to the lien created by the North Carolina statute, and the receiver must pay it out of the assets.

A lien against the assets of a bank, under the Georgia statute, was held applicable to, and enforceable against, a national bank in Fidelity & Deposit Company of Maryland v. Howard, 67 F.(2d) 961. Affirmed in Lewis v. Fidelity & Deposit Company of Maryland, 291 U. S. ——, 54 S. Ct. 848, 78 L. Ed. ——.