DINSMORE et al. v. SOUTHERN EXP. CO. et al.

(Circuit Court, S. D. Georgia, N. D. March 7, 1899.)

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.
  A suit to determine the validity of the action of state authorities with reference to a tax imposed by the United States involves a federal question, and a federal court has jurisdiction, without regard to the citizenship of the parties.

2. INTERNAL REVENUE—SUIT TO ENJOIN ACTION BY STATE AUTHORITIES—ISSUES.
  A suit by an express company or its stockholders against the railroad commission of a state, to enjoin the enforcement of an order requiring the company to pay the war stamp tax imposed by the United States on its manifests and bills of lading, without any demand on shippers for its payment, does not necessarily involve a construction of the act of congress

imposing the tax, as the defendants have no legal interest in the matter which entitles them to demand such construction.

3. SAME—ENFORCEMENT OF STAMP TAX—JURISDICTION OF STATE AUTHORITIES.
The question whether the war stamp tax imposed by the United States upon the manifests and bills of lading of express companies shall be borne by the companies or by shippers is one not within the control of the administrative officers of a particular state, and an order by a state railroad commission requiring its payment by the express companies is without jurisdiction and void.

4. SAME—POWERS OF RAILROAD COMMISSION UNDER STATE STATUTES.
The statutes of Georgia giving the state railroad commission the power to fix rates for transportation to be charged by express companies, and imposing penalties for violation of their orders, cannot be extended by construction to include authority to order an express company to pay the war stamp tax imposed by the United States, without demanding its payment from shippers, subject to the same penalties for its violation, such tax having no relation to the charge for transportation.

5. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE OFFICERS.
Where the statutes of a state permit the validity of the action of administrative state officers to be brought in question by a suit against them in the state courts, a citizen of another state, whose property rights are injuriously affected by such action, cannot be confined by such statutes to his remedy in the state courts, but may maintain a like suit against such officers in a federal court; and such suit is not one against the state.

6. EQUITY JURISDICTION—PREVENTING MULTIPLICITY OF SUITS.
Where a failure to obey an order made by a state railroad commission against an express company, which was unauthorized and void, would, under the state statutes, subject the company, in its daily business, to large numbers of individual actions, and to heavy penalties, a court of equity has jurisdiction of a suit to enjoin the enforcement of such order, on the ground that its decree will avoid a multiplicity of suits, and afford a more efficacious remedy than can be had at law.

William B. Dinsmore, C. Gray Dinsmore, and William B. Dinsmore, C. Gray Dinsmore and Dumont Clarke, as executors of and trustees under the will of William B. Dinsmore, deceased, stockholders of the Southern Express Company, filed their bill, with the recitation of facts following:

The Southern Express Company is a Georgia corporation. The plaintiffs are its shareholders, to the amount of $50,000. They are citizens of New York. The railroad commission of Georgia, by order passed the 2d of August, 1898, directed that the Southern Express Company pay the war stamp tax on its manifests and bills of lading required by the act of congress of the 13th day of June, 1898 (30 Stat. 448). By the same order the Southern Express Company was directed to conform therewith without making any demand on shippers for the payment of the tax, and to notify the commission of its compliance in five days from that date, and in default thereof the penalties of the Georgia statute were threatened. The complainants desired that the express company should refuse to pay the tax, and have the question of its liability settled by the courts, and formally requested the company to take this action. The company, however, declined to comply with this request; giving as the reason therefor that it was advised not to subject itself to the risk of incurring the severe penalties imposed by the state legislation, and which could be enforced by the commission as threatened, and for the further reason that the charter and franchises of the company might be impaired by state action. The bill is filed against the Southern Express Company, the railroad commission of Georgia and its members, and the attorney general of the state. The prayers are that the express company be enjoined from paying the tax, and that the railroad commission and the attorney general of the state be enjoined from proceeding to enforce the penalties of the state statute. The attorney general, representing himself and the railroad commission, demurred to the bill, and the cause was heard upon bill and demurrer.

Other facts essential to an understanding of the case may be gathered from the opinion of the court.

Frank H. Miller and B. W. K. Miller, for complainants.

Fleming G. du Bignon, for defendant Southern Exp. Co.

J. M. Terrell, Atty. Gen. of Georgia, for defendants railroad commission of Georgia, its members, and himself.

SPEER, District Judge (after stating the facts as above). The parties actually contesting in this proceeding are nonresident stockholders of the Southern Express Company, on the one side, and the members of the railroad commission and the attorney general of Georgia, on the other. The Southern Express Company, a Georgia corporation, is also made a party defendant, and injunction is prayed against it. It may with more propriety, however, be regarded as party plaintiff. It was made to take a position as defendant certainly for one reason, and perhaps for another also. It had declined to test in the courts the question whether the war stamp tax on its bills of lading and manifests is payable by the shipper or by itself. This was done because of the enormous penalties, of from $1,000 to $5,000 fine in each case, with which it was solemnly threatened by the railroad commission, unless in five days it abandoned its contention that the shipper must pay the tax, accept all shipments, and itself furnish, affix, and cancel the stamps. This is plain from the resolution of its directors, in which they state that "it is deemed expedient to comply with the orders of the railroad commission of Georgia in the premises, in order to avoid penalties under the laws of Georgia, and so clouding the company's title to its corporate franchises and rights as to embarrass its action." It is possible, also, that, being a resident corporation, the jurisdiction of the court here may have been questioned. The matter to be determined, however, involving the imposition of United States taxation by state authorities, we may be justified in concluding that the United States court has jurisdiction concurrent with that of the state courts to hear the parties, whether they are citizens of this or of other states. The Southern Express Company, then, so far as the jurisdiction can be affected, might well have taken its appropriate position as plaintiff. It cannot be said, however, in view of the averments of the bill, and the character of the demurrer, that the express company is in a position embarrassing to the court in the determination of the questions of law presented by the pleadings. Those questions are not so extensive as the demurrer of the commission, and the strong, ingenious argument of the attorney general, would seem to indicate. They do not, for instance, render necessary a construction by the court of the act of congress imposing the war stamp tax, nor any clause of it. Indeed, there are no parties to the record whose demand for the construction of the clause imposing the tax must be regarded. The complainants do not ask it. In the brief filed by their counsel, they expressly suggest that the construction of the revenue act is not involved. It is true, they pray that the express company may be restrained from "voluntarily complying" with the provisions of the order of the railroad commission directing it to furnish the stamps

and to pay the tax, but surely an injunction to this effect would be superfluous. There was and is and will be nothing "voluntary" to be discovered in the action of the express company in this regard. It not only refused to pay the tax, but, when ordered to do so by the commission, complied most reluctantly, and for fear of the more serious impositions the commission had in store for it. Why, then, should the court parade its authority to enjoin the express company not to make payments it would be delighted to escape?

Nor can it be said that the state has the right to ask a construction of the act. It has no pecuniary interest at stake. To adopt the language of the supreme court in a kindred case (Reagan v. Trust Co., 154 U. S. 390, 14 Sup. Ct. 1051), "There is a sense, doubtless, that the state is interested in the question, but only in a governmental sense." States, however, do not enter courts in a governmental sense. They cannot ordinarily be brought into court, but, when they condescend to come, they come as do ordinary litigants; and they are not heard unless they have an ascertainable, definite interest in the litigation. Here, moreover, the state is not before the court. The commission is here, but the commission does not contend, "L'état c'est moi," as did Louis le Grande Monarque. We shall presently see that the commission has as little concern with the construction of the revenue law as the state, which is not before the court. It is true, the learned attorney general, in his brief, states that the demurrer presents this question, "Does the act of congress levy the stamp tax upon the shipper or express company, or is it a general or floating tax?" Now, if the attorney general of Georgia was the attorney general of the United States, and was engaged in an effort to enforce the payment of the United States tax by the Southern Express Company, his proposition would probably require judicial determination. The fact, however, that he appears in this case as the attorney general of the state, betrays how untenable is his position. This revenue tax is imposed by the United States. It affects all the people of all the states. It is national in its character, and "admits and requires uniformity of regulation and enforcement in all of the states." It follows that its assessment, collection, and enforcement are not within the administrative control of the authorities of a particular state. The respective spheres of action of the state and United States, to use the apposite illustration of Chief Justice Brown in Hines v. Rawson, 40 Ga. 356, are each "as far beyond the reach of the other as if the line between them was traced by landmarks and monuments visible to the eye." Indeed, the action of the railroad commission, as recited in the bill and admitted by the demurrer, is not only an appropriation of functions belonging exclusively to officials of the United States charged with the collection of the tax, but it is an expansion of its own authority, as defined by the law of the state. This is to be found in section 2217 of the Civil Code of Georgia, and provides that all express and telegraph companies doing business in whole or part in this state "shall be under the control of the railroad commission of Georgia, who shall have full power to regulate the prices to be charged * * * for any service performed by any such company

or persons," etc. All of the powers of the commission relative to railroads are extended by this legislation to include telegraph and express companies. Without quoting the voluminous enactments defining the powers of the railroad commission, it will be enough to say that, like the section of the Code quoted above, so far as they are germane to this controversy they relate to the fixation of rates or prices for transportation or conveyance. In so far as they are penal in effect, under the familiar rule they must, of course, be strictly construed. Bearing in mind this cardinal canon of construction with regard to penal legislation, how unprecedented seems that latitudinous interpretation which would make the punishment fixed by the statute apply to the failure of a corporation to pay a disputed stamp tax imposed by the United States upon a written evidence of shipment required by the United States. This revenue exaction is no part of a rate for the shipment of express matter. It is no part of the price for "a service rendered" the shipper. It is a tax for national purposes, and its payment or collection is in no sense directly or indirectly within the sphere "of a state administrative 'board." Like the tax on distilled spirits, this is an internal revenue tax. Should the express company ship a package of any character in the absence of this stamp on the bill of lading, it would incur a penalty of $50. If it should accept and knowingly "remove" or ship a package of distilled spirits, unless it also bore the stamp required by the law, it would be guilty of a crime, and its officers punishable, on conviction, by imprisonment in the penitentiary. Now, has the railroad commission control over the shipment of an unstamped cask of liquor? Has it authority to direct that the express company, and not the distiller, shall pay for and attach the stamp? Has it any authority to threaten the imposition of its crushing penalties on the express company, and thus compel it to remove the liquor before the tax due from the distiller has been paid? This will scarcely be maintained. But in either case the duty of the express company must, of necessity, be determined by the construction of the United States law. The courts of the state may construe such laws, and make their construction effective, unless it should be appropriately denied by the courts of the United States, but the commission has no such power; and yet in this case it has gravely construed the act of congress, and issued its mandate accordingly. There can be no doubt that this is a great disadvantage to the express company in this state. It is denied its day in court, and cannot, without assuming unwarrantable hazard, proceed to test by legal proceedings the disputed question of its liability for this tax, as other express companies have done elsewhere. The commission might well have adopted the method of the railroad commission of Missouri relating to the same tax. The Missouri commission were also of the opinion that the tax was payable by the company, but in their order upon the subject they declared:

"The act referred to, however, does not definitely state by whom the required stamp shall be affixed; nor, as the commissioners are informed, does the internal revenue department decide as regards this question. If the stamp must be paid for by the shipper, the aggregate charge to him is increased by

the amount paid for the stamp; and, so far as he is concerned, there is an increase in the rate. But the express companies do not increase their transportation rates, and claim that the stamp required has nothing to do with the service, but is for an entirely separate transaction, which the law requires shall be paid for by some one, as yet undecided, and that after the completion of this separate transaction the transportation service begins, and for which no more than the legal charge is made. The question to be decided is, by whom must the expense of the required stamp be borne? The opinion of the commissioners is as before stated, but their opinion in this case is not law, nor would it be of any effect in deciding the matter. The question is now in the courts for settlement, and, until finally decided, must remain an open one. Should the decision of the courts be adverse to the express companies, and afterwards rates should be increased by them to cover the additional expense incurred by reason of the tax, then the commission would have full jurisdiction, and, after hearing, could, if found proper, restore the old rates. As the matter stands, there is no increase in the rate tariffs of the express companies, and, as regards the question of liability for the cost of the stamp required, commissioners decide they have no jurisdiction."

How clear, conservative, and equitable is this announcement! Neither the shippers nor the company are hindered in their approach to the courts. No fulmination is directed at either. How is it in Georgia? A corporation contributing daily to the comfort and convenience of thousands, and doing much for the advancement of the state, is practically excluded from the courts; or, if it should seek to maintain therein its conceptions of the law even for a single day after the five days' grace accorded by the commission, it is threatened with penalties which, if imposed upon its conduct of business for a half day, would involve it in irretrievable bankruptcy and ruin.

It is insisted, however, by the attorney general, that this court has no jurisdiction to grant any of the plaintiffs' prayers. The argument is that the action of the commission complained of is merely a reduction of rates; whether the reduction is reasonable or not is exclusively to be determined by the state courts; in no case can the court enjoin penalty suits; that the company has an adequate defense at law; that in no case, except in bankruptcy, is an injunction to be granted by a court of the United States to stay proceedings in the state courts; and that this is a suit against the state. Many cases are marshaled in support of these propositions. The fundamental misapprehension which has led the attorney general to this incorrect contention, and misapplication of precedents, seems to proceed from his omission to perceive that the action taken by the commission is not merely unreasonable, but is unauthorized, null, and void. Now, it cannot successfully be disputed that the courts are open to citizens of the state, to protect their property from the unauthorized action of officials; and in many cases the supreme court of the United States has held that:

"Whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts." Smyth v. Ames, 169 U. S. 517, 18 Sup. Ct. 422, and authorities cited.

The commission, then, is not above the law in either jurisdiction. Reagan v. Trust Co., 154 U. S. 364, 14 Sup. Ct. 1047 (Texas Com-

mission Case); Turnpike-Road Co. v. Sandford, 164 U. S. 592, 17 Sup. Ct. 198 (Turnpike Case); Smyth v. Ames, 169 U. S. 516, 18 Sup. Ct. 418 (Nebraska Commission Case). It will be found that these cases, and many others cited by the supreme court in its opinions, afford decisive refutation of that reasoning intended to defeat the plaintiffs' application for injunction against the commission. The supreme court holds:

That "the adequacy or inadequacy of the remedy at law for the protection of the rights of one entitled upon any ground to invoke the powers of the federal court is not to be conclusively determined by the statutes of the particular state in which suit may be brought"; that "the wise policy of the constitution gives him a choice of tribunals"; that "stockholders and incorporations may ask a decree enjoining the illegal action of the commission, upon the ground that it is unreasonable, unauthorized, or is repugnant to the constitution of the United States"; that "the courts of the United States sitting in equity can make a comprehensive decree covering the whole ground of controversy, and thus avoid the multiplicity of suits that would inevitably arise under the statute."

This holding is precisely in point. It is found in the invaluable opinion of Associate Justice Harlan in Smyth v. Ames, supra. There the company was, as in this case, made liable, not only to individual process for every act, matter, or thing prohibited by the statute, and for every omission to do any act, matter, or thing required to be done, but to a fine of from $1,000 to $5,000 for the first offense. It is further held that:

"The transactions with these corporations are so numerous and varied that the interference of equity could well be justified upon the ground that a general decree according to the prayers of the bill would avoid a multiplicity of suits, giving a remedy more certain and efficacious than could be given in any proceeding instituted against the company in a court of law; for a court of law could only deal with each separate transaction involving the rates to be charged for transportation. The transactions of a single week would expose any company questioning the validity of the statute to a vast number of suits by shippers, to say nothing of the heavy penalties named in the statute. Only a court of equity is competent to meet such an emergency, and determine once for all, and avoid a multiplicity of suits, matters that affect, not simply individuals, but the interests of the entire community."

In the same line of decisions summed up in the case just cited, the argument that the proceeding is against the state, and therefore not maintainable, is also judicially overthrown. The supreme court holds that the suits are not against the state, but against certain individuals charged with the administration of a state enactment, which it is alleged cannot be enforced without violating the constitutional rights of the plaintiff.

In view of these repeated declarations of the supreme court of the United States, it is obligatory upon this court to enjoin the enforcement of the order of the railroad commission, oppressive, as it is, to the Southern Express Company, and injurious to its stockholders. This must be done in order that the management of this business, so important to the public, may be admitted to the judicial tribunals of the state and of the United States upon a footing of equality with other litigants. The averments of the bill, taken with the brief of counsel, as we have said, at present do not call for a construction of the act, or for the final determination of the liability of the defendant com-

pany or of the shipper to pay it. The case, indeed, is not ripe for a final decree. Upon this preliminary hearing the decision will therefore be confined to matters distinctly in issue. The prayer for temporary injunction against the express company will be denied, and the railroad commission will be enjoined conformably to the prayers of the bill. It is not deemed necessary to enjoin the attorney general, for it is presumed that the eminent lawyer who is the official head of the bar of the state will, without such injunction, accord all appropriate respect to the decision of the court.