TRAMMELL et al. v. DINSMORE et al.

DINSMORE et al. v. SOUTHERN EXP. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. June 7, 1900.)

No. 820.

1. CARRIERS—STATE REGULATION—GEORGIA STATUTES.
    The provisions of the constitution of Georgia requiring · the legislature to pass laws regulating freight and passenger tariffs within the state, and regulations adopted by the railroad commission established by the statutes passed in pursuance thereof, administered subject to the limitation that the carriage cannot be required without reward or upon conditions amounting to the taking of property for public use without just compensation, do not violate the constitution of the United States, but are within the powers of the state, and have full force as public law.

2. SAME—RATES ESTABLISHED BY COMMISSION—POWER OF COURTS TO REVIEW.
    It is within the power and is the duty of the courts to inquire whether rates prescribed by a state railroad commission are unjust and unreasonable, such as to constitute an unconstitutional invasion of property rights, and, if so, to enjoin their enforcement; but they are not authorized to revise or change a body of rates, which is a legislative or administrative, rather than a judicial, function.

3. SAME—EXPRESS COMPANIES—INCREASE OF RATES TO COVER INTERNAL REVENUE TAX.
    The provision of the war revenue act of 1898, imposing a stamp tax on express receipts, neither authorizes nor prohibits an increase of rates

by an express company to cover the cost of the stamp required; and the action of a state railroad commission authorized by statute to prescribe rates for carriage between points within the state, in prohibiting an express company from adding the cost of the revenue stamp to the maximum rates prescribed, is within its jurisdiction and powers, and can only be set aside by the courts on the ground that the rates so compelled are so low as to be violative of constitutional rights.

4. APPEAL—ORDER ON REVERSAL—DIRECTING DISMISSAL.

Where the record shows that, in a suit in equity in the circuit court, a general demurrer, also assigning special grounds, was filed, and that the cause was heard on bill, demurrer, and a motion for a preliminary injunction, and an order granting an injunction, but neither sustaining nor overruling the demurrer, was filed, the circuit court of appeals, on an appeal from the order made, cannot properly direct the dismissal of the suit on the ground that the facts stated in the bill were insufficient, and the demurrer should have been sustained, since, on sustaining the demurrer, it would be proper to permit the bill to be amended. Per Shelby, Circuit Judge, dissenting.

5. CARRIERS—EXPRESS COMPANIES—VALIDITY OF ORDERS OF STATE BOARD.

Where a state railroad commission, prior to the passage of the war revenue act, had fixed maximum charges for the carriage of express matter between points in the state, which were deemed reasonable, an order made by the commission after the passage of such act, prohibiting an express company from adding to the charges prescribed the cost of the revenue stamp required on receipts, cannot be justified on the ground that such addition, which merely covered the increased cost of the service caused by the tax, made the rates unreasonable; and where such order required the stamp in all cases "to be furnished, attached, canceled, and paid by the express company alone, and not by the shippers in whole or in part," it was not a regulation of rates, but, in effect, a construction of the federal revenue act requiring the tax to be borne by the company, and forbidding it to shift the burden on the shipper, and as such erroneous and beyond the powers or authority of the commission, and void. Per Shelby, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

The complainants, who are citizens of the state of New York, are shareholders in the Southern Express Company, a Georgia corporation, which has its principal office in the state of Georgia, and conducts the business of an express carrier in that state and in 10 of the neighboring states. The charging part of the bill in this suit avers, substantially: That the constitution of the state of Georgia, adopted December 21, 1877, expressly charges the legislature of that state with the duty to pass laws from time to time to regulate freight and passenger tariffs, to prevent unjust discrimination on the various railroads of the state, and to prohibit the same from charging other than just and reasonable rates, and to enforce the same by adequate penalties. That, acting under this constitutional provision, the general assembly of the state of Georgia passed an act on October 14, 1879, to carry the same into effect, the provisions of which act have been enlarged from time to time, and by an act approved October 21, 1891, the powers of the railroad commissioners were extended so as to give them authority to regulate charges for express companies for transportation from one point to another in the state of Georgia. That, pursuant to this authority, the railroad commissioners fixed and prescribed rules, tariffs, and classifications governing express companies plying between points within the state of Georgia, and published and distributed their report of same to which the bill refers. That, from the date of the adoption of these measures the Southern Express Company conformed to the rules, orders, and tariffs so adopted by the railroad commission of Georgia, and were continuing to do so up to June 13, 1898,

when the congress of the United States passed the act commonly designated as the "War Revenue Act," by which it was made the duty of express companies on receiving a package for carriage to issue a receipt for such package, and providing that the receipt thus issued should bear a one cent stamp. That upon the taking effect of the war revenue act, July 1, 1898, the Southern Express Company asked and demanded the production by its customers of the stamp required to be attached under the provisions of the act at the issuing of its receipts or bills of lading, insisting that it should not carry any package or issue its receipt therefor until the sender or shipper furnished the necessary governmental stamp therefor. That certain citizens of Georgia refused to furnish these stamps, or to pay for the same if furnished by the express company, and thereupon complained to the railroad commission of the state of Georgia, to wit, the respondents Leander N. Trammell, Thomas C. Crenshaw, and Spencer R. Atkinson, who as such commission, on July 11, 1898, issued an order as follows: "It being represented to the railroad commission of Georgia that the Southern Express Company, a corporation engaged as an express company in this state in the business of a common carrier of goods and merchandise for hire, since the passage by the federal congress of an act approved June 13, 1898, entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' has exacted, and continues to exact, from shippers, as a condition precedent to forwarding any goods tendered to it for transportation between points within this state, the payment of a special tax upon such shipments imposed by said act, thus indirectly increasing the cost of transportation beyond the rate fixed therefor by this commission, it is ordered that the Southern Express Company do appear before this commission on the 18th day of July, 1898, then and there to show cause, if any it can, why it should not be held to have violated the rules and regulations of this commission by the exactions or overcharges, as aforesaid, and why suit should not be instituted against it in every case of such overcharges for the recovery of the penalty provided by law for such illegal act." That the express company, in obedience to this order, appeared before the commission, and "cause was shown respectfully denying all jurisdiction in the premises on the part of said commission, who on August 2, 1898, ordered and directed said stamp tax to be furnished, attached, canceled, and paid by the said Southern Express Company alone, and not by the shippers, in whole or in part." That on August 8, 1898, the complainants duly requested the Southern Express Company and its directors, and each of them, in writing, to omit and refuse to pay, and to refrain from paying, the said tax, and to test the constitutionality of the said action, and to refrain from voluntarily placing stamps upon its said receipts, and canceling the same, before delivery, and to apply to a court of competent jurisdiction to determine the liability of the company under the said act, in the mode and manner as required by the said railroad commission. That on the same day (August 8, 1898) the board of directors replied to this request, stating that they deemed it inexpedient to comply with it, on the ground that the failure to comply with the requirements of the order of the Georgia railroad commissioners of August 2, 1898, would subject the company to litigation with the authorities of the state of Georgia and the said railway commission, and the company would thereby run the risk of incurring penalties under the laws of Georgia, and of so clouding the title to its corporate franchise and rights as to embarrass its action. It replied, further, that the company "will notify the railroad commission of Georgia that, while respectfully protesting against the legality and validity of its order of August 2, 1898, the company will abide by and perform the same, and also that the company will file its application to said commission to be allowed to collect from the shipper, in addition to the existing rates sanctioned by the commission, the amount of war revenue tax held by the commission to be payable by the company, and in aid thereof will present to the commission a renewed request for the suspension of the order of August 2, 1898, until decision has been rendered on such application." On August 29, 1898, the board of directors notified the complainants that the railroad commission of Georgia had denied the application of the company to be allowed to collect from the

shipper, in addition to the existing rates sanctioned by the commission, the amount of the war revenue tax held. by the commission to be payable by the company, and that the company was then observing the Georgia railroad commission's rates on intrastate business in Georgia, and was as to such business paying the amount of the war revenue tax, without charging the same to the shipper, or endeavoring to collect the same from the shipper.

Thereafter (October 27, 1898) the bill in this suit was filed, from which we make the following literal excerpts: "And the complainants aver that there is no reason to believe that there can be and will be an increase of complainants' local and intrastate business; that the cost of conducting said business has been fixed by years of experience, and the amounts now paid therefor are the lowest that can be obtained and adopted, and by which the public can be satisfactorily served. by said express company; that the charges fixed by the said commissioners before the passage of the said revenue law were established so as to enable the company to live, operate, and pay a fair dividend or return to its owners for the money and property embarked in the said business, and that the order of the said commissioners requiring the payment by the said company of the said one cent stamp on all bills of lading and receipts that it issued for the business done was resolved upon by the said commissioners illegally and arbitrarily, and will cause a large reduction in the income of the company; that the enforcement of this order will be unfair, unjust, and unreasonable; that the rates of carriage now imposed require the said express company to carry many classes of freight at barely cost, and the expense incident to said service will in future be materially increased by the stamp aforesaid; that the payments for said stamps thus required to be made as a part of the rates imposed on the express company, and under which it must do business by the order of said commission, will result in irreparable damage and injury, and will cause a diminution of income, as nearly as can be ascertained, of forty thousand dollars ($40.000) per annum, and a loss to complainants, in a decreased value of their shares, of ten thousand dollars or other large sum. * * * Your orators further show that the said Southern Express Company and its directors, having declared their intention to do so, will now pay the said revenue tax out of the income and profits of the company, and will thereby diminish the assets of the company, and lessen the dividends thereon, and the value of its shares, and will also pay the tax to the state on its gross income, without any deductions therefrom of the revenue tax so imposed; that the voluntary compliance with the provisions of the said order of the railroad commission will expose the express company to a multiplicity of suits by and on behalf of its numerous shareholders, which will work irreparable injury to the business of the company, and involve it in great and irreparable damage to your orators and of all the other shareholders. * * * Your orators pray: (1) That it may be adjudged and decreed that the order of the railroad commission of the state of Georgia of August 2, 1898, requiring the Southern Express Company to pay the amount of the war revenue tax on business from one point to another in the state of Georgia without endeavoring to collect the same from the shippers, or requiring them to make the payment thereof before the issuing of the said receipts or bills of lading, to be without jurisdiction on the part of the said commission, unconstitutional. null, and void. (2) That the Southern Express Company, its officers and agents, be restrained from voluntarily complying with the provisions of the said order of the said railroad commission of August 2, 1898, and paying the said war revenue tax as aforesaid. (3) That the attorney general of the state of Georgia be restrained from instituting any suit of any sort against the Southern Express Company for the purpose of enforcing the provisions of the said order of the said railroad commission of August 2, 1898. (4) That a writ of provisional and perpetual injunction, of the same purport, tenor, and effect as hereinbefore set forth, be granted to complainants. (5) That your orators may have such other and further relief in the premises as the nature of the case shall require and to a court of equity may seem meet."

The respondents submitted a general demurrer to the bill, assigning for cause thereof that it appeared by the bill and amendment that the com-

plainants were not entitled to the relief prayed for, and that there was no equity in the bill and amendment; and, for special cause of demurrer (besides others not necessary to state), showed that the court had no jurisdiction of the matters set forth in the complainants' bill to grant relief in the premises, "(b) because the acts complained of against these defendants, as set forth in said bill, are clearly within the jurisdiction and discretion of the railroad commission of Georgia, under the constitution and laws of said state, and the courts have no jurisdiction to control said commission in such matters, nor to restrain by injunction the exercise of such discretion, it not appearing from the allegations in said bill that there was any denial of the constitutional rights of complainants, or of the Southern Express Company, or of any gross abuse of discretion; (c) because the power to prescribe just and reasonable rates is legislative, and not judicial, and therefore the courts have no jurisdiction to inquire whether such power were well and properly exercised by the said commission,—especially is this true on the presentation of the facts as set out in complainants' bill."

The record shows that certain extracts from the Twenty-Sixth Annual Report of the Railroad Commission of Georgia, for 1898, to which the bill had referred, were offered in evidence by the railroad commissioners, and admitted; the extracts being Tariff A, Tariff B, Tariff E, and rules from one to 11, inclusive, applicable thereto. From the supplemental brief submitted in this court by counsel for the complainants (appellees and cross appellants here), it appears that on the hearing in the circuit court "the commission stood upon its demurrer with its evidences of rates taken from their annual report to the executive of the state." From the original brief submitted by counsel for Dinsmore and others, the complainants, we learn:

"The order complained of is as follows:

"'Office of the Railroad Commission of Georgia.

"'Atlanta, Ga., August 2, 1898.

"'In re complaint against the Southern Express Company for overcharge in demanding that shippers furnish revenue stamps to affix to bills of lading or receipts: On motion of Commissioner Crenshaw, it is ordered that the report and opinion this day filed by Commissioner Atkinson, to whom the above-entitled matter was referred, be, and the same is hereby, adopted as the opinion and judgment of this commission. And it is further ordered that unless within five days from this date this commission is advised by the Southern Express Company that it has discontinued the practice of exacting from shippers the duty of furnishing the requisite revenue stamps to be attached to bills of lading or receipts as a condition precedent to receiving and forwarding goods tendered for shipment, that this commission will take such legal steps as may be necessary to enforce compliance with its rules and regulations.

"'By order of the board.                    L. M. Trammell, Chairman.
"'J. D. Massey, Secretary.'

"The foregoing order, and the report and opinion of Commissioner Atkinson therein referred to, are attached to the brief submitted by counsel for the railroad commission of Georgia. In that report and opinion two questions are considered: (1) Does the act of the federal congress in question impose upon the express company the duty of furnishing the requisite revenue stamp to be affixed to the bill of lading required in the case of each consignment to be issued by the carrier? (2) If so, is the refusal to accept and forward such goods, except upon the condition that the shipper shall bear the burden of the carrying to the extent of providing such stamp in addition to the payment of the regular rate prescribed by this commission for the transportation of such goods, a violation of the law which prohibits carriers from exacting a rate of transportation in excess of the maximum rate so prescribed?"

The result of the consideration of the first question is thus expressed in the report: "The better conclusion is that when the congress required carriers to issue a bill of lading to every shipper its purpose was to require the issue of such evidence of contract of affreightment as would enable the

shipper to enforce the duty of carriers; and, since affixing the stamp was necessary to the completion of such a bill of lading, the duty was, by necessary implication, imposed upon the carrier of furnishing and canceling it."

In answer to the second question, namely, whether or not the exaction of the cost of a revenue stamp from a shipper amounts to a violation of the law which prohibits carriers from exacting a rate of transportation in excess of the maximum rate prescribed, and hence an "extortion," within the meaning of that term as employed in section 2187 of the Civil Code of Georgia, which provides: "If any railroad corporation organized or doing business in this state under any act of incorporation or general law of this state now in force, or which may hereafter be enacted, or any railroad corporation organized or which may hereafter be organized under the laws of any other state, and doing business in this state, shall charge, collect, demand or receive more than a fair and reasonable rate of toll or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon its track, or any of its branches thereof, or upon any railroad within this state which it has the right, license or permission to use, operate or control the same shall be guilty of extortion, and upon conviction thereof, shall be dealt with as hereinafter provided,"—the conclusion is reached that the Southern Express Company, "in refusing to accept for shipment goods tendered to it without the prepayment by the shipper of the revenue tax required by it to be affixed to its bill of lading, violates the provisions of the act hereinbefore referred to, and incurs the penalties which are therein prescribed."

The first prayer of the bill was granted, and a provisional injunction against the railroad commission was also granted. The second and third prayers were refused.

J. M. Terrell, for appellants Trammell et al.

F. H. Miller and W. K. Miller, for appellees Dinsmore et al.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Subject to the limitation that the carriage cannot be required without reward, or upon conditions amounting to the taking of property for public use without just compensation, a state has power to prescribe the charges of public carriers for the carriage of persons and merchandise within its limits. The acts of the legislature of Georgia constituting the railroad commission, and prescribing its powers and duties, do not violate the provisions of the Georgia constitution. And the provisions of that constitution, and of the statutes passed in pursuance thereof, administered subject to the limitation that the carriage cannot be required without reward, do not violate the constitution of the United States, and have full force as public law. Railroad Commission v. Smith, 70 Ga. 694, affirmed by the supreme court of the United States, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377; Railroad Commission Cases, 116 U. S. 307–331, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191, 29 L. Ed. 636; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Road Co. v. Sandford, 164 U. S. 578–598, 17 Sup. Ct. 198, 41 L. Ed. 560; Smyth v. Ames, 169 U. S. 466–550, 18 Sup. Ct. 418, 42 L. Ed. 819; Houston & T. C. R. Co. v. Metropolitan Trust Co. of City of New York (C. C.) 90 Fed. 683.

The Southern Express Company, as to its business conducted between points within the state of Georgia, is bound to receive for car-

riage, and to carry, express matter properly tendered to it by any person for transportation, provided the person so tendering such goods offers to pay its charges, not to exceed the maximum rates fixed by the railroad commission, so long as the body of the rates, or the system of maximum charges, prescribed by the commission, are not unjust and unreasonable, and such as to work a practical destruction to the rights of property of the shareholders in the corporation thus acting as a common carrier. The formation of a tariff of charges for the transportation by a common carrier of persons or property is a legislative or administrative, rather than a judicial, function. The courts are not authorized to revise or change the body of rates imposed by the commission. They do not determine whether one rate is preferable to another, or what, under all the circumstances, would be fair and reasonable as between the carriers and the shippers. They do not engage in any mere administrative work. There can be no doubt of their power and duty to inquire whether a body of rates prescribed is unjust and unreasonable, and such as to work a practical destruction to rights of property, and, if found so to be, to restrain its operation. Reagan v. Trust Co., 154 U. S. 397, 14 Sup. Ct. 1047, 38 L. Ed. 1014. "While rates for the transportation of persons and property within the limits of a state are primarily for its determination, the question whether they are so unreasonably low as to deprive the carrier of its property without such compensation as the constitution secures, and therefore without due process of law, cannot be so conclusively determined by the legislature of the state, or by regulations adopted under its authority, that the matter cannot be the subject of judicial inquiry." Smyth v. Ames, 169 U. S. 526, 18 Sup. Ct. 426, 42 L. Ed. 842.

It seems clear to us, from the statement of the case which we have digested from the record, that the issue between the railroad commission of Georgia and the Southern Express Company was, had that company the right to add to the maximum charges prescribed by the commission the cost of the one cent revenue stamp required by the act of congress to be attached to a receipt issued in each case of shipment? As the act of congress in question does not purport to fix or affect the rates which carriers may charge for transportation, its construction is not necessarily involved in the solution of this issue. In the circuit court counsel for the complainants submitted that the construction of the revenue act is not involved in this case, and the judge of that court who passed the decree from which this appeal is taken so held, and in the opinion which he delivered said: The issues presented by the pleadings do not render necessary a construction by the court of the act of congress imposing the war stamp tax, nor any clause of it. The shippers who refused to furnish the stamp or pay the cost of it did so on the ground that the demand thereof was an unlawful increase of the maximum rates prescribed by the commission. On this ground the complaint was made to the commission, and in its notice to the carrier the express company's action is referred to as "thus indirectly increasing the cost of transportation beyond the rate fixed therefor by the commission." When the carrier appeared before the commission in obedience to the notice, it showed cause, etc., respectfully, as the

bill avers, by "denying all jurisdiction in the premises on the part of the said commissioners"; from which it is evident that the carrier relied on the act of congress to support its action. Thus challenged, the commission proceeded to discuss and construe the act, and, in effect, held that it did not affect their power and duty to enforce the observance of the rates which they had prescribed. And later, when the carrier, still protesting, applied for leave to increase its rates, the commission refused the leave, and adhered to its judgment that the maximum rates which it had prescribed were just and reasonable, and should be enforced. It is true, but wholly immaterial, that the commissioners held and expressed the view that the war revenue act imposes the tax in question exclusively upon the carrier, and precludes it from relieving itself of the expense of affixing and canceling the stamp required to be attached to each bill of lading, manifest, or other evidence of receipt, by passing that expense on to the shipper, and requiring him to submit to an increased rate to that extent. This construction is unsound, but, as we have just said, it is wholly immaterial; for the act of congress neither prohibits nor authorizes such an increase in rates. Neither expressly nor by implication does it contain any provision on that subject. Crawford v. Hubbell (April 16, 1900) 20 Sup. Ct. 701, Adv. S. U. S. 701, 44 L. Ed. ——; Express Co. v. Maynard (April 16, 1900) 20 Sup. Ct. 695, Adv. S. U. S. 695, 44 L. Ed. ——. But the laws of Georgia, and the requirements of the railroad commission in pursuance thereof and in accord therewith, while the limitations of the fourteenth amendment of the constitution of the United States are observed, not only affect, but control, this carrier as to its Georgia business, and prohibit it from increasing its charges beyond the maximum rates prescribed by the commission.

There is nothing in the bill in this case that tends to show that the tariffs of rates and classification, and the rules prescribed by the commission, and now sought to be enforced by it, do not observe the limitations of the constitution of the United States. The one substantive fact which the bill with reasonable accuracy states is that the payment of the tax imposed by the war revenue law, as required by the order of the railroad commission, will aggregate to the Southern Express Company in the state of Georgia annually the sum of $42,000, which is repeated further on in this language: "That the payments for said stamps thus required to be made as a part of the rates imposed on the express company, and under which it must do business, by the order of said commission, will result in irreparable damage and injury, and will cause a diminution of income, as nearly as can be ascertained, of forty thousand dollars per annum, and a loss to complainants, in a decreased value of their shares, of ten thousand dollars." And further on still the complainants again repeat, and "show that the said Southern Express Company, and its directors, having declared their intention to do so, will now pay the said revenue tax out of the income and profits of the company, and will thereby diminish the assets of the company, and lessen the dividends thereof, and the value of its shares." There is no statement whatever of the amount of income of the company from its Georgia business (intrastate business), nor from its other

business (interstate business), nor from both together, either gross income or net income, or profits of the company. It is stated simply that the tax will aggregate in the state of Georgia annually the sum of $42,000, and that this will cause a diminution of the income,—an obvious result as to the net income. But neither the substantive fact averred nor the obvious conclusion tends to show that the commission has hitherto trenched upon, or is about to trench upon, the limitations of the constitution, and thus present a case within the remedial juris-diction of a court of equity. The aggregate amount in the state of Georgia annually of the war revenue tax, as stated, namely, $42,000, shows the number of shipments by that carrier in that state (whether intrastate alone does not appear) of 4,200,000 annually. The argu-ment of the pleader proceeds and shows that the express company has to make its own arrangements with the railroads for the carrying of its freight on passenger trains; that the contracts of the express company with the railroad companies are matters of negotiation, and the average charge of the railroads is 50 per cent. of the express com-pany's gross receipts; that it costs the express company 43 per cent. of its receipts to do its business, and this, added to the average of 50 per cent. which must be paid to the railroads, makes the total cost to the express company 93 per cent. of its receipts; that considerable express business is done at a charge of 10 cents per package, and a very large proportion of its intrastate business is done at a charge of 25 cents per package. "Taking ninety-three per cent. from these charges, and there is left a margin of seven-tenths of a cent on the 10 cent packages, and one and three-quarters of a cent on the 25 cent packages. If the express company is compelled to pay one cent each on the re-ceipts, it loses three-tenths of a cent on every 10 cent package, and makes only three-quarters of a cent on the 25 cent packages. This would materially reduce the very moderate profit of the business, and will so reduce the income of the company as to lessen any dividends payable to its shareholders, like the complainants." The argument proceeds, further, that in section 9 of the act of the general assembly of the state of Georgia approved December 24, 1896 (Pub. Laws, p. 28), to levy and collect a tax for the support of the state government for the years 1897 and 1898, all persons and companies doing an express business, and charging the public therefor, in the state of Georgia, were required to pay 2½ per cent. on their gross receipts, and all per-sons, or the superintendent or general agent of each express company, were required to make a quarterly return, under oath, in the form therein prescribed, under the penalty of indictment, conviction, and punishment, pursuant to section 1039 of volume 3 of the Code of 1895, and a failure to pay the tax will subject such corporation to a for-feiture of its charter. We notice this argument only to say that the "considerable express business done at a charge of 10 cents per pack-age" is not affected by the action of the commission, because a refer-ence to the tariffs prescribed by it, referred to in the bill and made a part of the record, shows that the lowest maximum rate prescribed therein is 25 cents, and the adding of one cent to the 10 cent rate would not make a rate in excess of that allowed by the commission's

tariff. We suggest, further, that the argument shows no reason why the tax imposed by the government of the United States should be added to the commission's rates that does not apply with at least equal force to the tax of $2\frac{1}{2}$ per cent. on their gross receipts which the state government is shown to have levied. We say with at least equal force; we think with greater force, because this last tax would adjust itself to the shipments uniformly, and one who shipped a small package, or a package for a short distance, for the rate of 10 cents, would not be required to pay as much as one who shipped a larger package for a longer distance at the maximum rate shown in the commission's tariffs of $1.40 per hundred pounds. The increase made on this basis would be uniform, and not unjustly discriminative between shippers; while the increase which the carrier proposes to make by adding the tax imposed by the war revenue act does manifestly discriminate, largely and unjustly, between the shipper of a small package for a short distance at a low rate and the shipper of a larger package the longer distance at the larger rate. Though each shipper is charged one cent, the relation of this charge to the service is unequal. Further, it does not appear but that the 50 per cent. of the express company's gross receipts which the railroads impose upon it by negotiation, and which charge more largely diminishes the revenues of the express carrier, should not, with equal justice and reason, be added to the maximum rates prescribed by the commission. This is absurd, and is suggested only to illustrate the utter want of force in the argumentative pleading which the bill attempts to put in the place of a showing of substantive facts.

It seems clear to us that the bill makes no case for the interference of a court of equity to restrain the action of the railroad commission of Georgia, and that the demurrer, though some of its special grounds which we have not recited may have been not well taken, should have been sustained. This disposes of the appeal and of the cross appeal.

It is therefore ordered that the decree of the circuit court be, and the same is hereby, reversed, and that the suit be, and it is hereby, dismissed, at the costs of the complainants.

(June 16, 1900.)

SHELBY, Circuit Judge. I respectfully dissent from the opinion of the court in this case. The opinion concludes with the proposition that the demurrer to the bill should have been sustained. No decree was rendered by the circuit court either overruling or sustaining the demurrer. It is true that errors are assigned predicated upon the failure of the circuit court to sustain the demurrer to the bill, but, in advance of a decree on the demurrer, no question, I think, is raised in that regard for review here. The court, after holding in the opinion that the demurrer should have been sustained, directs that the bill be dismissed. If the bill, on a hearing on the special demurrers, had been found deficient in its statement of facts, it is usual, and it would have been proper, to allow amendment. The bill should not, I think, be dismissed by this court for defects in the statement of facts, pointed out by special demurrers, before the demurrers are decided by the

circuit court. The decree appealed from, rendered on March 7, 1899, is given in the footnote.[1] Judge Speer's opinion is reported in 92 Fed. 714. I think the decree is sustained by the authorities cited in the opinion, and that it should be affirmed.

The seventh paragraph of the bill shows the order made by the railroad commission, and why it was made:

"That certain citizens of Georgia refused to furnish the stamps to be attached to the receipts or bills of lading, or to pay for the same, if furnished by the express company, and thereupon complained to the railroad commission of the state of Georgia, to wit, the said Trammell, Crenshaw, and Atkinson, who on July 11, 1898, issued an order as follows: 'It being represented to the railroad commission of Georgia that the Southern Express Company, a corporation engaged as an express company within this state in the business of a common carrier of goods and merchandise for hire, since the passage by the federal congress of an act approved June 13, 1898, entitled "An act to provide ways and means to meet war expenditures, and for other purposes," has exacted, and continues to exact, from the shippers, as a condition precedent to forwarding any goods tendered to it for transportation between points within this state, the payment of a special tax upon such shipments imposed by said act, thus indirectly increasing the cost of transportation beyond the rate fixed therefor by this commission, it is ordered that the Southern Express Company do appear before this commission on the 18th day of July, 1898, then and there to show cause, if any it can, why it should not be held to have violated the rules and regulations of this commission by the exactions or overcharges as aforesaid, and why suit should not be instituted against it in every case of such overcharges for the recovery of the penalty provided by law for such illegal act.' Cause was shown respectfully denying all jurisdiction in the premises on the part of said commission, who on August 2, 1898, ordered and directed the said stamp tax to be furnished, attached, canceled, and paid by the said Southern Express Company alone, and not by the shippers, in whole or in part."

The purport and effect of the order is to so construe the act of congress of July 13, 1898, as to make it incumbent on the express company to pay the tax therein prescribed, and to hold that the express company cannot cast the burden of the tax on the shipper without making the rates unreasonable, and exceeding the rate of charges previously fixed by the railroad commission. In the case of Express Co. v. Maynard (decided April 16, 1900) 20 Sup. Ct. 695, Adv. S. U. S. 695, 44 L. Ed. ——, the supreme court holds that there is nothing in the act

[1] SPEER, District Judge. The above-stated cause having been duly assigned for hearing on the application for temporary injunction at Augusta, in said district, on the 10th day of February, 1899, and the parties having been fully heard on the bill and the demurrer thereto, and the court having taken time for advisement, it is now, upon consideration, ordered, adjudged, and decreed that the prayer that the Southern Express Company be enjoined from voluntarily paying the war stamp tax in question be, and the same is hereby, denied. Ordered, adjudged, and decreed, further, that the defendant the railroad commission of Georgia, and each member thereof, to wit, the individual defendants, Leander N. Trammell, Thomas C. Crenshaw, Jr., and Spencer R. Atkinson, be, and the same are hereby, enjoined from any and all order, direction, action, or legal steps instituting, or tending to institute, and from any and all proceedings for the recovery of the penalties named in the statute of Georgia in that behalf to enforce compliance with its said order against the Southern Express Company, its officers or agents, as threatened in the order of said commission dated August 2, 1898, for the reason that said order is null and void, and said commission has no jurisdiction to adjudge and designate the party who shall pay said tax. Ordered, further, that the cause proceed as usual in equity.

of congress levying the tax that prevents the express company from adding the tax to the charges made by it.

The order was unquestionably made by the railroad commission on the theory that the act of congress required the Southern Express Company to pay the tax, and that it forbade the company to shift the burden on the shipper. The supreme court in the case cited has not construed the act of congress on the question as to who is required to pay the tax, but it has decided that, conceding that the act requires the express company to pay it, there is nothing in the act to prevent the company from casting the burden of the tax on the shipper. The rates charged by the express company were prescribed as reasonable by the railroad commission of Georgia. The complaint in the order of July 11, 1898, is that the express company has required the shippers to pay the special tax, "thus indirectly increasing the cost of transportation beyond the rate therefor fixed by the commission." The authority conferred on the railroad commission is to fix reasonable rates. The order of the commission cannot be justified on the theory that the charges of the express company, with the taxes added, are unreasonable. If the rate which the commission has fixed was reasonable, it certainly does not make it unreasonable to add to it the increased cost of transportation caused by the act of congress. As the commission fixed the rate, the order complained of must have been made on the assumption that the act of congress places the tax on the express company, and deprives it of the right to shift the burden by contract.

In Express Co. v. Maynard, supra, the supreme court said:

"As there was no allegation that the rates existing prior to the imposition of the one cent stamp tax were unreasonable, it would follow that the rates which were otherwise reasonable were decided not to be so solely because there was added to the charge for each package the exact amount of the increased cost for transporting the package, occasioned as to each package by the specific imposition on each by the act of congress of the one cent stamp tax. But, to cause rates which were conceded to be reasonable to become unreasonable because alone of such increased charge, the assumption must be made that the act of congress not only imposed the burden of the tax solely on the express company, but also forbade its shifting the same by any and every method."

The order of the railroad commission prescribes who shall pay the tax and who shall not pay it, and, in effect, prevents any contract between the shipper and the carrier in reference to the payment of the tax. This order is evidently based on an erroneous construction of the act of congress. It is assumed by the commission that the act requires the express company to pay the tax, and forbids the express company from making any agreement which shifts the burden upon the shipper. A brief quotation from the case last cited will show the conclusion of the supreme court on this point:

"A tax rests upon real estate. Can it be said that by the law imposing such a tax it was intended to prevent the owner of real property from taking into consideration the amount of a tax thereon, in determining the rent which is to be exacted by him? A tax is imposed upon stock in trade. Must it be held that the purpose of such a law is to regulate the price at which the goods shall be sold, and restrain the merchant, therefore, from distributing the sum of the tax in the price charged for his merchandise? As the means by which the burden of taxes may be shifted are as multiform and as vari-

ous as is the power to contract itself, it follows that the argument relied on, if adopted, would control almost every conceivable form of contract, and render them void if they had the result stated. Thus, the price of all property, the result of all production, the sum of all wages, would be controlled irrevocably by a law levying taxes, if such a law forbade a shifting of the burden of the tax, and avoided all acts which brought about that result. It cannot be doubted that to adopt, by implication, the view pressed upon us, would be to virtually destroy all freedom of contract, and its final analysis would deny the existence of all rights of property."

The order made by the commission and enjoined by the circuit court cannot be held to be one fixing reasonable rates to be charged by the express company. The commission had already performed that duty. If, in view of changed conditions, the commission had made a new schedule of charges, and in doing so had not exceeded its authority, there would be no cause of complaint. But the order cannot be treated as one fixing a new schedule of charges. The one formerly fixed remains unchanged, and the present order, in effect, says to the express company: "You shall not require the shipper of packages to pay the one cent tax. You shall not contract with him to secure its payment by him. You shall furnish, attach, and cancel the stamp. The shipper shall not do it, in whole or in part." The order is one forbidding certain contracts prior to the shipment of the goods by the express company. The express company is to be subjected to the suits and penalties, not for violating any new schedule prescribed, but for the making of contracts which shift the burden of the tax. The railroad commission seeks to accomplish by its order what was done by the writ of mandamus by the state courts in Michigan. But the supreme court, in reversing the decree of the supreme court of Michigan, has, it seems to me, established a construction of the act of congress in direct conflict with the theory on which the railroad commission of Georgia acted. Express Co. v. Maynard, supra.

I think that the circuit court was right in holding that the "railroad commission had no jurisdiction to adjudge and designate the party who shall pay the tax." The order made by the commission requires "the stamp tax to be furnished, attached, canceled, and paid by the Southern Express Company alone, and not by the shippers, in whole or in part." In effect, the command is that the express company shall pay it, and that the shipper shall pay no part of it, and that the shipper and the carrier shall not be permitted to make any contract for its payment, in whole or in part, by the shipper.

I concur in the views expressed by the court that a state has power to prescribe the charges of public carriers for the carriage within the state of persons and merchandise. This power is, of course, subject to the limitation that the carriage cannot be required without reward, or upon conditions amounting to the taking of property for public use without just compensation. I do not deny or question the right of the state to tax, control, and regulate, subject to constitutional limitations, any business carried on by corporations or individuals within its limits. Conceding all this, where does the commission get the right to say who shall and who shall not pay a federal tax? It is the theory of our system of government that the state and the nation alike are to exercise their powers, respectively, each without hin-

drance from the other. This theory, by necessary implication, excludes wholly any interference by either with an independent exercise by the other of its constitutional powers. Cooley, Tax'n (2d Ed.) 83. The state tribunals must, in proper cases, construe federal laws, subject to the final decision of the supreme court; but neither the legislature of a state, nor a commission created by it, has authority to make laws or orders directing who shall or shall not pay a tax constitutionally levied by the United States. Surely, such orders cannot be valid in cases where they would tend to embarrass the government in the collection of the tax. The order in question does not purport to be one regulating the charges to be made by the express company. It is, in terms, one laying down a rule as to who shall and who shall not pay a stamp tax to the United States. It is applicable to all packages, whether or not the stamp, if treated as an additional charge, makes the whole charge exceed the rates previously fixed by the commission. The order, it seems to me, not only embodies an erroneous construction of the revenue law, but its enforcement may materially interfere with the collection of the tax. The question of the taxing powers of the states, as their exercise has affected the functions of the federal government, has often been considered by the supreme court, and the right of the states to impede or embarrass the constitutional operations of the general government, or the rights of its citizens, by levying taxes, has been always denied. Crandall v. Nevada, 6 Wall. 35, 18 L. Ed. 744. If the states can interfere by prescribing regulations as to the collection of the revenues of the federal government, and can say who shall and who shall not pay a prescribed tax, and forbid contracts between citizens in reference to it which are permissible under the statute creating the tax, then the states have the right and power to embarrass and impede at a vital point the operations of the general government. The same policy and law which forbids the states to tax the instrumentalities of the federal government should deprive them of the power to embarrass, prevent, or regulate the collection of revenues levied under its constitutional powers.

The supreme court has said on two occasions, Chief Justice Marshall delivering the opinions, that "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Weston v. City Council of Charleston, 2 Pet. 449, 7 L. Ed. 481. Is it not clear that the order of the railroad commission seeks "to control the operation" of the law enacted by congress? It pointedly says who shall and who shall not pay the tax levied by the act. It forbids lawful contracts on the subject. It impedes the collection of the tax by saying that it shall not be paid by certain persons who otherwise might pay it. If the state can create a commission to make the order in question, has it not equal authority to regulate by statutes and commissions the attaching, canceling, and furnishing of the stamps on checks, conveyances, leases, and other instruments, and on patent medicines, matches, and other articles taxed by the statute?

If the administration of the United States revenue laws is subject to

state supervision, is there any reason why the post offices within the state and the stamps there used should escape the same jurisdiction? If, for some reason not apparent to me, it be true that the commission may control and regulate the payment of the tax, it must be done within legal restrictions. The commission cannot be permitted to make orders construing the federal statute which, in effect, deprive the express company of its property without due process of law, or which force it to carry without compensation. In other words, when the commission fixes rates by regulating federal taxation, it must keep within the same limits that would govern if it sought to perform its functions by direct action. The bill in this case shows that reasonable rates had been previously fixed. It shows that the subsequent order complained of will cause loss to the express company of $42,000 annually on its business in Georgia; that is, that the express company must do business receiving $42,000 less each year than it would receive if paid at the reasonable rates fixed by the commission. The bill also shows that, applying the last order of the commission to the rates now charged by the express company, some of which are below the schedule of the commission, part of the express company's business will be done at an actual loss. The demurrers, if we are to consider them before a decree on them by the circuit court, admit the averments of the bill. These averments, I think, are sufficient to sustain and authorize the preliminary injunction. I am of opinion, therefore, that the bill should not be dismissed.