GRANT *v.* HOUSTON, county warden.

No. 7498. April 17, 1930.

P. Z. *Geer* and N. L. *Stapleton,* for plaintiff.

J. A. *Drake, solicitor,* for defendant.

BECK, P. J.  Early Grant entered a plea of guilty in the city court of Miller County, Georgia, at the September term, 1929; and on September 9, 1929, after he had entered his plea and after he had begun to labor on the chain-gang in Miller County, he instituted habeas corpus proceedings against Houston, county warden, setting up the usual allegations in the petition for habeas corpus; and in addition he set forth that he should be discharged, because the city court of Miller County had been abolished by the legislature of Georgia by an act entitled an act to repeal "an act to establish a city court in and for the County of Miller," the repealing act being approved August 7, 1929 (Ga. Laws 1929, p. 459).  The respondent demurred to this petition; and after a hearing the court sustained the demurrer and the petitioner excepted.

The first question to be decided is whether or not the city court of Miller County was abolished by the passage of the act just cited.  We are of the opinion that the act of itself did not abolish the court.  It is provided in the first section thereof that "from and after the passage of this act, the above-recited act [the act to establish a city court in and for the County of Miller, approved August 8, 1908], with all the amendments thereto, be and the same is hereby repealed, and the city court of Miller County,

established under the laws of Georgia 1908, folio 180-194, inclusive, with all amendments thereto, is hereby abolished." Then, after providing, in section 2, for the transfer of cases to the superior court, section 3 of this act declares that "it shall be the duty of the ordinary of Miller County, Georgia, to call an election at all of the voting precincts in said county immediately after the passage of this act, and submit in said election to the qualified voters of Miller County, Georgia, the question as to whether or not said city court of Miller County shall be abolished." Section 6 of the act is as follows: "Be it further enacted, that if there are more votes cast for the city court to be abolished than there are for the city court to remain in life, that it stand abolished immediately after said election. To make this clear, if only three people vote in said election and two of them vote for the court to be abolished, then it stands abolished and this act shall take effect immediately." Section 7, after providing for the appointment and payment of managers and clerks of the election and for the form of the ticket, reads as follows: "Provided a majority of all the qualified voters of said county participate in the election (on one side or the other). It being the intention of this provision to get out a full vote; and if those who vote for the repeal of the law and those who vote against the repeal of the law, when added together, constitute a majority of all the qualified voters of said county, then that meets the requirements of this referendum. If the ordinary fails to call the election as herein provided for before the 15th of September, 1929, then this bill becomes a law without the election, but it is not to go into effect until January 1st, 1930."

To arrive at the intention of the legislature in the passage of this act—and it is the duty of the court to determine and declare what was the intention of the General Assembly in the passage of this act, —we must consider the entire act, the proviso contained in it as well as the formal enacting clauses. From section 6, quoted above, it would appear that if a majority of those voting at the election cast their ballots "against the city court," then the court was abolished as the result of the election, irrespective of the number of qualified voters voting in the referendum election. In fact section 6 makes the very radical declaration, that, "To make this clear, if only three people vote in said election and two of them vote for the court to be abolished, then it stands abolished and this act shall

take effect immediately." Section 6 and the provision which we have quoted from section 7 may be reconciled by holding that the provision in section 6, that "if there are more votes cast for the city court to be abolished than are for the city court to remain in life, that it stand, abolished immediately after said election," is effective, "provided a majority of all the qualified voters of said county participate in the election." The last sentence in section 6 should be treated as an illustration, and not as a positive legislative enactment, that two votes might abolish the city court if there are only three voting at the election. In the election upon the reference there were, as it appears from the allegations of the petitition, 104 votes against the city court and 67 votes for the court, and it appears on the face of the petition for habeas corpus that there were 1288 registered qualified voters in the county; and therefore, as there was not a majority of the qualified voters of the county voting at the election, if we give effect at the proviso at the end of section 7, the court was not abolished. And we are of the opinion that the proviso should be given full effect. It is a part of the act. There are dicta to the effect that if a proviso is repugnant to the enactments in the body of the bill, the proviso is void. "A saving totally repugnant to the body of the act is void." 1 Black. Com. 195. This court has decided that where a proviso in an act is inconsistent with the purview, the latter must prevail. *Jackson* v. *Moye*, 33 *Ga.* 296. And where the proviso in an act of the General Assembly is repugnant to the body of the act, the latter will prevail. *Penick* v. *High Shoals Mfg. Co.*, 113 *Ga.* 592 (38 S. E. 973). Other authorities to the same effect might be added. But in this case we do not think there is such a repugnance as to render the proviso void, but rather it should be reconciled to the preceding provisions of the act, though the construction given seems somewhat strained. We should endeavor to reconcile the two provisions, however, so as to escape the necessity of holding an act of the General Assembly void.

In the proviso to the act it is declared: "If the ordinary fails to call the election as herein provided for before the 15th day of September, 1929, then this bill becomes a law without the election. The ordinary did call the election before the 15th day of September, 1929. Consequently the section of the act providing for the abolition of the court did not result in its abolition, inas-

much as the requirement of the law that an election should be called by the ordinary before the 15th day of September, 1929, was complied with. If the election as held was void for the reasons assigned, that fact did not have the effect of abolishing the court, it not being suggested that the ordinary did not regularly and in good faith call the election. If there were merely irregularities in the election, that would not destroy the effect of the election. If the election was void because of the failure to have the proper number of managers at one or two of the precincts (and we do not decide that it was), then the ordinary should have called another election, or, upon his neglect or failure to do so, a writ of mandamus might have compelled him to call the election. We merely hold here, however, that inasmuch as the call had been made before the 15th day of September, the court was not abolished under the provisions of the act, under a proper construction thereof.

*Judgment affirmed. All the Justices concur.*