### 21731. EMORY UNIVERSITY et al. v. NASH, Tax Commissioner, et al.

CANDLER, Justice. This litigation arose when Emory University through its trustees filed a petition for a declaratory judgment and for injunctive relief in the Superior Court of De-Kalb County against six officials of that county, namely, W. Fred Nash, as its Tax Commissioner; Vernon E. Hobbs, Thomas G. Smith and R. Worley Field, as its Tax Assessors; and Robert Broome, as its Sheriff; and also against Dixon Oxford, in his official capacity as State Revenue Commissioner of Georgia. For convenience the petitioner will hereinafter be referred to as "Emory." So far as need be stated, the record shows: Emory is a Georgia corporation, and as such obtained its charter on January 25, 1915. Its home office and principal place of business is in DeKalb County. Emory has no capital stock, is not conducted for pecuniary gain or profit to anyone and no part of the net income from its operation inures to any private person. Its sole purpose is to give, promote and extend under Christian influence instruction and education in theology and in the arts, sciences and professions and to encourage and promote research and study in all branches of learning. A substantial portion of the real property on which Emory is located, as well as the personal property it uses in its operation, is located in DeKalb County,

and fee simple title to such property is in Emory. For the support of its educational program, it has an endowment in excess of $1,000,000 some of which is invested in real estate and some in various forms of intangible property. Under its charter, its educational programs are open to all members of the general public able scholastically and morally to qualify for admission. It is not an educational institution established for white people nor is it an educational institution established for colored people. None of its endowment is limited in use to persons of any race or color. On November 3, 1961, Emory, by action of its Board of Trustees, issued the following statement of policy: "There is not now, nor has there ever been in Emory University's charter or bylaws any requirement that students be admitted or rejected on the basis of race, color, or creed. Insofar as its own governing documents are concerned, Emory University could now consider applications from prospective students, and others seeking the opportunity to study or work at the University, irrespective of race, color, or creed. On the other hand, Emory University derives it corporate existence from the State of Georgia. Georgia constitutional provisions permit and the Georgia legislature has seen fit to extend certain tax-exemption privileges to private educational institutions in Georgia, but with the specific proviso that such tax-exemption privileges shall not be available to institutions established for white persons which admit colored persons as students or to institutions established for colored persons which admit white persons as students. Emory could not continue to operate according to its present standards as an institution of higher education, of true university grade, and meet its financial obligations, without the tax-exemption privileges which are available to it only as long as it conforms to the aforementioned constitutional and statutory provisions. When and if it can do so without jeopardizing constitutional statutory tax-exemption privileges essential to the maintenance of its educational program and facilities, Emory University will consider applications of persons desiring to study or work at the University without regard to race, color, or creed, continuing University policy that all applications shall be considered on the basis of intellectual and moral standards and other criteria designed to assure the orderly and effec-

tive conduct of the University and the fulfillment of its mission as an institution of Christian higher education." On November 7, 1961, Douglas A. Rucker, a Negro and a colored person as defined by the statutes of this State, who is a citizen of the United States and of Georgia, applied to Emory for admission as a student for the term beginning in September, 1962, and ending in June, 1963. His application has been examined and it has been found and determined that he has such education and training as qualify him for admission to Emory's educational program; that he is in all respects acceptable as a student for the term beginning in September in accordance with Emory's aforementioned policy; and that, in accordance with such policy, his application should be approved and he should be permitted to enroll at Emory as a student. His application for admission to Emory's educational program would be approved and he would be accepted as a student except for the risk and uncertainty attendant thereupon concerning Emory's tax exemptions. No Negro has heretofore been admitted to Emory as a student; and under the provisions of Art. VII, Sec. I, Par. IV of the Constitution of 1945 (*Code Ann.* § 2-5404) and the provisions of § 92-201 of the Code of 1933, Emory's real, personal and intangible property has been heretofore exempted from State and county taxes. However, Emory concedes that any real estate it has purchased for income producing purposes and paid for out of its endowment is taxable and, as to this portion of its property, Emory does not seek any relief by this proceeding. The defendants have stated or represented to Emory that if Rucker, or any other person similarly situated, is accepted by it as a student, it will for that reason, and for that reason alone, subject its real, personal and intangible property to taxation, and that they will in their respective official capacities assess all of its property for State and county taxes and proceed with the collection thereof.

There are prayers that the court declare and adjudicate what the tax status of Emory will be if it admits Rucker, or any other person similarly situated, as a student; that it be declared and adjudicated that any action taken by the defendants, or any one of them, to assess and collect taxes on any property belonging to Emory, other than real estate purchased by it with endowment funds, will be an illegal and

void act; and that the defendants and each of them be permanently enjoined from assessing and collecting any tax on property belonging to Emory solely because of its admission of Rucker, or any other person similarly situated, as a student to its educational program.

Oxford, as State Revenue Commissioner, demurred and moved to dismiss the petition as to him on the ground that Emory's suit, insofar as it relates to him, is in effect a suit against the State, which was brought without the State's consent. The other defendants moved for a summary judgment in their favor on the ground that the tax exemption granted to an educational instititution by Art. VII, Sec. I, Par. IV of the Constitution of 1945 (*Code Ann.* § 2-5404), and the statute passed pursuant thereto (*Code Ann.* § 92-201), is not available to an institution which accepts a Negro student. Emory also moved for a summary judgment in its favor on the ground that there was no issue of any material fact and that it was entitled to a judgment for all of the relief prayed for as a matter of law. On the hearing, it was stipulated that a majority of Emory's property was acquired by gift; its charter contains no requirement that the students it accepts be limited to race or color; and that it has never accepted a Negro student. By one judgment, the trial judge sustained the demurrer interposed by the defendant Oxford and dismissed the petition as to him; overruled Emory's motion for a summary judgment; and granted the motion of the remaining defendants for summary judgment. Emory excepted and assigned error on that part of the judgment which overruled its motion for judgment and which granted the motion for judgment by the defendants, other than Oxford. *Held:*

By an act approved February 21, 1850 (Ga. L. 1849-50, p. 379), the General Assembly exempted from taxation the property of all private schools located in this State and placed them "upon the same footing with the University of Georgia." During the period which intervened between the approval of that act and the adoption of the Constitution of 1945, other legislation was passed granting tax exemptions to private schools, but it would serve no useful purpose in deciding this case to point out or discuss any of those several acts. So for the purpose of deciding this case, we will move

on to a consideration of the applicable portion of the Constitution of 1945. Art. VII, Sec. I, Par. IV, of that instrument (*Code Ann.* § 2-5404) provides: "The General Assembly may, by law, exempt from taxation . . . all institutions of purely public charity; all intangible personal property owned by or irrevocably held in trust for the exclusive benefit of . . . educational . . . institutions, no part of the net profit from the operation of which can inure to the benefit of any private person; all buildings erected for and used as a college, incorporated academy, or other seminary of learning, and also all funds or property held or used as endowment by such colleges, incorporated academies, or seminaries of learning, provided the same is not invested in real estate; and provided, further, that said exemptions shall only apply to such colleges, incorporated academies or other seminaries of learning as are open to the general public; provided further, that all endowments to institutions established for white people, shall be limited to white people, and all endowments to institutions established for colored people, shall be limited to colored people . . .; provided the property so exempted be not used for the purpose of private or corporate profit and income, distributable to shareholders in corporations owning such property or to other owners of such property, and any income from such property is used exclusively for . . . educational . . . purposes . . . and for the purpose of maintaining and operating such institution; this exemption shall not apply to real estate or buildings, other than those used for the operation of such institution and which is rented, leased or otherwise used for the primary purpose of securing an income thereon." In 1946 the General Assembly passed an act exempting from taxation all of the property which it was authorized to exempt under the above-mentioned article, section and paragraph of the Constitution, using for that purpose the exact language there employed. (Ga. L. 1946, p. 12; *Code Ann.* § 92-201). Emory is an incorporated educational institution which comes within the scope of those institutions of learning enumerated in that part of the Constitution which is quoted above and as also enumerated in the aforementioned act of 1946; and no contention to the contrary is made by the defendants. The above-quoted portion of the Constitu-

tion and the exempting act of 1946 (*Code Ann.* § 92-201) clearly exempts from taxes Emory's real and personal property, including all of its endowment which is not invested in real estate for income producing purposes, unless its exemption is cut off and destroyed by the two provisos contained therein which read: "and provided, further, that said exemptions shall only apply to such colleges, incorporated academies or other seminaries of learning as are open to the general public; provided further, that all endowments to institutions established for white people, shall be limited to white people, and all endowments to institutions established for colored people, shall be limited to colored people." These two identical provisos were placed in the Constitution of 1877 by an amendment to Art. VII, Sec. II, Par. II which the people ratified on November 5, 1918, and it is significant that the taxing authorities of this State have never taken the position that they deprive any private school of the tax exemption which the same provision plainly grants alike to all of them. As we view these two provisos, the first one, standing alone, means that no private school is entitled to a tax exemption unless it is open to the general public without regard to race or color; and the second one, standing alone, means that a private school would not be entitled to a tax exemption unless it operated on a segregated basis as to the white and colored races. Since there is unquestionably an irreconcilable conflict between these two provisos, they completely neutralize and destroy each other (*Adams v. Johnson,* 182 Ga. 478, 185 SE 805) and since such inconsistent and contradictory provisos cancel out each other and leave in full force and effect the remaining portions of the tax exemption provisions of both the Constitution and the act of 1946, we are not required to find some possible meaning of the two provisos when we rule, as we now do, that the irreconcilable conflict between the only parts of the quoted portion of the Constitution and the exempting act of 1946 which have any reference to race or color results in neither requiring anything concerning integration or segregation as a condition to the tax exemption so plainly granted to private schools by the remaining portion of the exempting provisions. It is a well settled rule of long standing in this State that a tax exemption which is plainly authorized by the Constitution and expressly granted by an act of the General

Assembly is not destroyed, withdrawn or nullified by a proviso added thereto unless such proviso by clear and plain verbiage shows that it was the intention of the exempting authorities by the proviso to destroy at birth the tax exemption they had so plainly granted. The provisos here involved being in irreconcilable conflict and completely inconsistent with each other, they neither show such an intention nor do they have such an effect. *Penick v. High Shoals Mfg. Co.*, 113 Ga. 592 (38 SE 973); *Linton v. Lucy Cobb Institute*, 117 Ga. 678 (45 SE 53); and *Grant v. Houston*, 170 Ga. 414, 417 (153 SE 56). Accordingly, we hold that Emory, as a private school, can accept colored students without jeopardizing its tax exemptions and that the trial court erred in its holding to the contrary and in refusing to grant its application for the injunction sought. When the remittitur from this court reaches the trial court, direction is given that the judgment in favor of the defendants be vacated and that a final judgment in favor of Emory be entered which will accord with the rulings here made.

*Judgment reversed with direction. All the Justices concur. Head, P. J., concurs specially.*

ARGUED JULY 10, 1962—DECIDED SEPTEMBER 14, 1962—
REHEARING DENIED OCTOBER 1, 1962.

*Henry L. Bowden, Ben F. Johnson,* for plaintiff in error.

*George P. Dillard, Herbert O. Edwards, Robert E. Mozley,* contra.

HEAD, Presiding Justice, concurring specially. Under the provisions of the act of 1946 (Ga. L. 1946, p. 12; *Code Ann.* § 92-201), exemption from taxation of specified property, including funds held or used as an endowment, is granted to institutions of learning within the class specified in the body of the act. The body of the act is followed by three provisos. "The general purpose of a proviso, . . . is to except the clause covered by it from the general provisions of a statute, or from some provisions of it, *or to qualify the operation of the statute in some particular.*" (Italics supplied.) Georgia R. & Bkg. Co. v. Smith, 128 US 174, 181 (9 SC 47, 32 LE 377). The first proviso is to the effect that endowments shall not be invested in real estate; admittedly, this proviso is not in issue

here. The second and third provisos purport to relate back to the body of the act, and their construction and proper application is before this court for determination.

The act of 1946 follows the constitutional provision incorporated in the Constitution of 1945, Art. VII, Sec. I, Par. IV (*Code Ann.* § 2-5404). The question therefore arises, what was the intent in the adoption of the constitutional exemption from taxation here involved? "The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. . . If different portions seem to conflict, the courts must harmonize them if practicable, and must lean in favor of a construction which will render every word operative, rather than one which makes some idle and nugatory." *Wellborn v. Estes,* 70 Ga. 390, 397.

The second proviso limits the exemption from taxation to such institutions of learning "as are open to the general public." The intent and purpose of this second proviso is not definite, but uncertain. The requirement that the exempted institutions of learning must be "open to the general public" is without limitation or qualification. It can not be debated but that the term "general public" includes all of the public, many thousands of whom would be unfit to seek instruction at the college level by reason of extreme youth, extreme age, poor health, or by reason of total lack of preparation essential to satisfactory accomplishment at the college level. The term "open to the general public" therefore means, and could mean, only those qualified students acceptable to and approved by the admissions authority of the school or college. This construction accords with the charter of Emory University, since no limitation is imposed therein as to the admission of students.

The third proviso, "that all endowments to institutions established for white people, shall be limited to white people, and all endowments to institutions established for colored people, shall be limited to colored people," is ambiguous, vague, and uncertain, as to the intent of its application. Does this proviso, properly construed, mean that colleges and other institutions of learning might use all grounds, buildings, furnishings, tuitions, fees, and income from all sources for the benefit of all students who might be accepted, without regard to color or race, and not

endanger the exemption from taxation granted in the body of the act, excepting only an existing endowment? Or would use of a part of the endowment for students other than those for whom the college was established subject all property to taxation? If taxation is to be applied to endowments only in instances where the college or institution of learning is open to the general public, would taxation apply only to so much of the endowment as might be used annually, or would the total of the endowment be subject to taxation, if any part should be used other than for the benefit of students for whose benefit the college was established? Nothing is said in the third proviso about income on endowments. Assuming that there is no encroachment on the corpus of the fund composing the endowment, would the interest or income from the endowment be exempt from taxation regardless of its use, since it is not mentioned in the proviso, or would the income only, being the only part used, be subject to taxation?

While other illustrations might be suggested to demonstrate the vagueness and uncertainty of the third proviso, the foregoing is sufficient to demonstrate uncertainty to such extent as to totally defeat the purported limitation on the use of endowments. Especially is this true since the body of the act exempts both endowments and all "intangible personal property owned or irrevocably held in trust." At the time the constitutional exemption was granted and the tax exemption statute enacted pursuant thereto, money was included in the legal definition of intangible personal property. *Code Ann.* § 92-113. While an endowment might exist in property other than money, the income therefrom would be payable in money or its equivalent. The third proviso being incapable of any legal construction as applicable to the exemption from taxation, and being otherwise in conflict with the body of the act, if construed as limiting the exemption granted, the proviso must fall, and the body of the act must prevail. *Penick v. High Shoals Mfg. Co.*, 113 Ga. 592 (38 SE 973).

I concur in the majority view that Emory University may consider the applications of students without regard to color or race and may accept students pursuant to its standards and requirements, without endangering its exemption from taxation as an educational institution. I concur in the judgment of reversal.